RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0200P (6th Cir.)
File Name: 02a0200p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DUYONN ANDRE VINCENT,
   *Petitioner-Appellee,*

   *v.*

KURT JONES,
   *Respondent-Appellant.*

No. 00-2441

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 98-40007—Paul V. Gadola, District Judge.

Argued: April 30, 2002

Decided and Filed: June 6, 2002

Before: SUHRHEINRICH and GILMAN, Circuit Judges;
HOOD, District Judge.[*]

---

## COUNSEL

**ARGUED:** Janet A. Van Cleve, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellant. David A. Moran, STATE

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Janet A. Van Cleve, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellant. David A. Moran, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellee.

———————

## OPINION

———————

JOSEPH M. HOOD, District Judge. This is an appeal from a decision granting a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted by a jury of first-degree murder. At the close of the prosecution's case, Petitioner moved for a directed verdict on the first-degree murder charge. At issue is whether the state trial judge granted a directed verdict at that time such that the continuation of the trial and submission of the first-degree murder charge to the jury constituted double jeopardy. Inasmuch as the state trial judge's comments, coupled with the state court's docket entry, amounted to an acquittal on the first-degree murder charge, the district court's decision granting the writ of habeas corpus is **AFFIRMED**.

### FACTUAL BACKGROUND

Petitioner and two co-defendants were charged with open murder and possession of a firearm in the commission of a felony. The charges arose from a shooting death that occurred during a confrontation between two groups of youths at a high school in Flint, Michigan. The three defendants were tried before two separate juries during one trial. At the close of the prosecution's case in chief, and outside the hearing of the jury, counsel for all three defendants moved for directed verdicts of acquittal on the charges of first-degree murder, on the grounds that there was insufficient evidence of premeditation and deliberation. After all parties had presented their arguments, the trial judge said:

## CONCLUSION

For the forgoing reasons, we **AFFIRM** the district court's decision granting habeas corpus relief pursuant to 28 U.S.C. § 2254.

*See* J.A. 220. There was no ambiguity in this statement. Furthermore, the trial judge's later comments clearly reflect his belief that he had previously granted the motion for a directed verdict. *See* J.A. 198 ("Oh, I granted a motion but I have not directed a verdict."); J.A. 205 ("And Counsel should certainly be aware of the fact that there has been no harm that has come about by the Courts [sic] ruling earlier."); J.A. 207 ("I've reconsidered the ruling that the Court made . . ."). Additional support is found in the docket sheet which contained the following entry for March 31, 1992:

MOTIONS BY ALL ATTYS FOR DIRECTED VERDICT. COURT AMENDED CT: 1 OPEN MURDER TO 2ND DEGREE MURDER.

*See* J.A. 87.

We now address whether the above statements and actions constituted a resolution of some or all of the factual elements of the offense charged such that jeopardy attached. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977). We find that when the trial judge granted the motion for directed verdict on March 31, 1992, his actions constituted a grant of an acquittal on the first-degree murder charge such that jeopardy attached. We further find that he was not entitled to reverse that decision later in the trial. It is irrelevant whether the trial judge had informed the jury of his decision. After hearing oral arguments on the issue by both parties, the trial judge concluded that the government had not proved premeditation or planning in the slaying, a required element for first-degree murder. *See* J.A. 220. Thus, the trial judge made a determination on the facts that there was insufficient evidence of first-degree murder. By later submitting the case to the jury on the open murder charge, the trial judge subjected the petitioner to prosecution for first-degree murder in violation of the Double Jeopardy Clause.

Nothing else? Well my impression at this time is that there's not been shown premeditation or planning in the, in the alleged slaying. That what we have at the very best is Second Degree Murder. I don't see that the participation of any of the defendants is any different then anyone else as I hear the comment made by Mr. Doll about the short time in which his client was in the vehicle. But I think looking at it in a broad scope as to what part each and every one of them played, if at all, in the event that it's not our premeditation planning episode. It may very well be the circumstance for bad judgment was used in having weapons but the weapons themselves may relate to a type of intent, but don't necessarily have to show the planning of premeditation. I have to consider all the factors. I think that the second Count should remain as it is, felony firearm. And I think that Second Degree Murder is an appropriate charge as to the defendants. Okay.

*See* J.A. 220, Trial Colloquy (3/31/92). The trial judge then discussed several unrelated matters with the attorneys. Finally, prior to adjourning for the day, the prosecutor requested to make a brief restatement regarding first-degree murder the following morning. The trial judge agreed to hear him.

The next day, April 1, 1992, the court allowed the prosecutor to make a presentation regarding the propriety of directing a verdict on the first-degree murder charges. Defense counsel for the petitioner objected on the basis that the Court had granted the motion for directed verdict the day before and that jeopardy had attached at that time. The trial judge responded:

Do you really believe that? You think that when a decision is made that before it's recited the parties who are directly involved in it and particularly the jury because we're asking now for the jury not to consider certain factors that might be brought to them, that a Court cannot consider things in great length and I, I try to be an

open person, I try to give everybody an opportunity to talk and say anything they want. And I'm not a stick in the mud. I just don't stick there and say "well, that's where I am." I try to be open about things and flexible.

*See* J.A. 195, Trial Colloquy (4/1/92). When counsel for one of the co-defendants joined in objecting on double jeopardy grounds, the following exchange took place:

THE COURT: You think double jeopardy has anything to do with this?

MS. CUMMINGS: Yes. I believe once you've directed. A verdict–

THE COURT: Why is that?

MS. CUMMINGS: A verdict that that's . . .

THE COURT: I haven't directed a verdict to anybody.

MS. CUMMINGS: You granted our motion.

THE COURT: Oh, I granted a motion but I have not directed a verdict.

*See* J.A. 197-8, Trial Colloquy (4/1/92). After hearing all the parties, the trial court decided to take the motion under advisement, stating:

Well, I'm going to consider the argument that Counsel has made. And Counsel should certainly be aware of the fact that there has been no harm that has come about by the Courts ruling earlier. The jury was not alerted or informed in any way whatsoever as to the, the conclusion this Court drew after arguments of counsel. I'm going to reserve a ruling on it. We'll come back to it a little later on after I hear a good more and think a little bit more about it. Now I'm basing, of course, the decision upon what we have up until such time as the motion's being made. But I'll reserve the ruling.

We of course accept the Pennsylvania Supreme Court's definition of what the trial judge must consider in ruling on a defendant's demurrer. But just as the trial judge's characterization of his own action cannot control the classification of the action under the Double Jeopardy Clause, so too the Pennsylvania Supreme Court's characterization, as a matter of double jeopardy law, of an order granting a demurrer is not binding on us.

*Smalis,* 476 U.S. at 144 fn5 (citations omitted).

A review of the trial transcript reveals that the trial judge initially granted the motion for directed verdict through his statements at the end of the day March 31, 1992. He then allowed the government to reargue the issue the next morning and took the matter under advisement. The following morning, two days after granting the motion, he reversed his decision.

Our conclusion that the trial judge granted the motion is warranted by the precise language he used. At the end of the day, after hearing oral arguments, the trial judge concluded:

Nothing else? Well my impression at this time is that there's not been shown premeditation or planning in the, in the alleged slaying. That what we have at the very best is Second Degree Murder. I don't see that the participation of any of the defendants is any different then anyone else as I hear the comment made by Mr. Doll about the short time in which his client was in the vehicle. But I think looking at it in a broad scope as to what part each and every one of them played, if at all, in the event that it's not our premeditation planning episode. It may very well be the circumstance for bad judgment was used in having weapons but the weapons themselves may relate to a type of intent, but don't necessarily have to show the planning of premeditation. I have to consider all the factors. I think that the second Count should remain as it is, felony firearm. And I think that Second Degree Murder is an appropriate charge as to the defendants. Okay.

statements were not in dispute; rather, it was the legal significance of those statements that was in dispute.

Once a defendant has been acquitted of a crime, the Double Jeopardy Clause prohibits any further prosecution of the defendant for that crime. *See* U.S. Const. amend. V.; *United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977). "[W]hether the trial is to a jury or to the bench, subjecting the defendant to postacquital factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause." *Smalis v. Pennsylvania*, 476 U.S. 140, 145 (1986). In *Martin Linen* the Supreme Court stated that:

> [W]e have emphasized that what constitutes an 'acquittal' is not to be controlled by the form of the judge's action. Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.

430 U.S. at 571 (citations omitted). *See also Smalis,* 476 U.S. at 144.

We agree with the district court that whether the state trial judge acquitted the petitioner of first-degree murder is a question of law and not one of fact. In this case, the statements of the trial judge are not in question. Rather it is the legal significance of these statements that is the focus of our inquiry. Accordingly, we are not bound by the holding of the Michigan Supreme Court that the trial judge's statements did not constitute a directed verdict under Michigan law. Instead, we must examine the state trial judge's comments to determine whether he made a ruling which resolved the factual elements of the first-degree murder charge. Such a conclusion is supported by the United States Supreme Court's decision in *Smalis,* where, in considering whether the grant of a demurrer constitutes an acquittal for the purposes of double jeopardy, Justice White, speaking for a unanimous court, wrote:

*See* J.A. 205, Trial Colloquy (4/1/92). The trial resumed and Petitioner and other witness testified. The next morning, April 2, 1992, the trial judge stated:

> I've reconsidered the ruling that the Court earlier made and I've decided to let the jury make its own determination on the Degrees. That's where we'll stand now so we'll let them have all those issues submitted to them, First, Second, Manslaughter and you can go on from there.

*See* J.A. 207-8, Trial Colloquy (4/2/92). The jury subsequently convicted the petitioner of first-degree murder. His co-defendants were convicted of second-degree murder and involuntary manslaughter.

All three defendants appealed their judgments, at least in part, on double jeopardy grounds. Separate Michigan Court of Appeals panels considered each appeal. The two panels which heard Petitioner's co-defendants' appeals determined that there was no double jeopardy violation because the trial judge had not ordered a directed verdict. The panel hearing Petitioner's appeal determined that the trial judge had ordered a directed verdict and could not constitutionally reverse a grant of directed verdict later in the trial. The panel reversed Petitioner's first-degree murder conviction on double jeopardy grounds and ordered entry of a conviction of second-degree murder and re-sentencing. *Michigan v. Vincent*, 546 N.W.2d 662 (Mich. Ct. App. 1996). Petitioner's case was appealed to the Michigan Supreme Court, which reversed the Court of Appeals in a 4 to 3 decision, finding that the trial judge had not ordered a directed verdict. *Michigan v. Vincent*, 565 N.W.2d 629 (Mich. 1997). Petitioner filed a motion to reconsider, pointing out a docket entry which indicated that the trial judge had granted the motion for directed verdict.[1] The Michigan Supreme Court denied the motion without comment. Petitioner's petition for a writ of

---

[1]This docket entry was not discovered until after the Michigan Supreme Court had rendered its decision.

certiorari was denied by the United States Supreme Court on November 10, 1997.

On January 8, 1998, Petitioner filed his petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Michigan, arguing that "the Michigan Supreme Court's conclusion that an oral grant of a directed verdict not reduced to writing was insufficient to terminate jeopardy was contrary to, or an unreasonable application of, United States Supreme Court precedent." Petitioner's Brief at 13. The district court referred the matter to a magistrate judge who subsequently recommended granting the writ. After considering the matter *de novo* in light of the respondent's objections, the district court found that the statements of the trial judge were sufficient to rise to the level of an acquittal of the first-degree murder charge under United States Supreme Court precedent, such that the continuation of the trial constituted a violation of the Double Jeopardy Clause of the Fifth Amendment. The petition for a writ of habeas corpus was granted, and this appeal timely followed.

### STANDARD OF REVIEW

A district court's legal conclusions in a habeas proceeding are reviewed *de novo* and its factual findings are reviewed for clear error. *House v. Bell*, 283 F.3d 737 (6th Cir. 2002). Under 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under this provision, a writ may issue if the state court applied a legal rule that contradicts United States Supreme Court precedent, or if the state court applied the correct legal rule but its application of the rule to the facts of the case was objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362, 405-13 (2000).

### DISCUSSION

Respondent argues that the district court's decision that the trial judge violated the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution was erroneous on two alternate grounds. Initially, Respondent argues that the Michigan Supreme Court's determination that the trial judge's statements were not a directed verdict is entitled to deference. Alternatively, Respondent argues that the state trial judge could reconsider his grant of the motion for directed verdict shortly thereafter without violating the Double Jeopardy Clause.

Respondent initially contends that the state trial judge did not order a directed verdict by his statements on March 31, 1992. His position is that the Michigan Supreme Court's determination that the statements were not a directed verdict was a factual determination that is entitled to deference under 28 U.S.C. § 2254(e).[2] The district court took the position that the Michigan Supreme Court's determination was not a factual finding by holding that the state trial judge's

---

[2] In pertinent part, 28 U.S.C. § 2254 provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.