PRICE, WARDEN *v.* VINCENT

No. 02–524.   Argued April 21, 2003—Decided May 19, 2003

REHNQUIST, C. J., delivered the opinion for a unanimous Court.

*Arthur A. Busch* argued the cause for petitioner. With him on the briefs were *Michael A. Cox*, Attorney General of Michigan, *Thomas L. Casey*, Solicitor General, *Janet A. Van Cleve*, Assistant Attorney General, *Donald A. Kuebler, John C. Schlinker, Dale A. DeGarmo*, and *Michael A. Tesner.*

*Jeffrey A. Lamken* argued the cause for the United States as *amicus curiae* urging reversal. On the brief were *Solicitor General Olson, Assistant Attorney General Chertoff, Deputy Solicitor General Dreeben, Sri Srinivasan*, and *Joel M. Gershowitz.*

*David A. Moran,* by appointment of the Court, 537 U. S. 1186, argued the cause for respondent. With him on the brief was *Randy E. Davidson.*\*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

The United States Court of Appeals for the Sixth Circuit granted habeas relief to respondent Duyonn Andre Vincent after concluding that the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment, barred his conviction for first-degree murder. *Vincent* v. *Jones,* 292 F. 3d 506 (2002). Because this decision exceeds the limits imposed on federal habeas review by 28 U. S. C. § 2254(d), we granted the petition for certiorari, 537 U. S. 1099 (2002), and now reverse.

## I

In an altercation between two groups of youths in front of a high school in Flint, Michigan, Markeis Jones was shot and

---

\*Briefs of *amici curiae* urging reversal were filed for the State of Texas et al. by *Greg Abbott,* Attorney General of Texas, *Barry R. McBee,* First Assistant Attorney General, *Jay Kimbrough,* Deputy Attorney General, *R. Ted Cruz,* Solicitor General, *Idolina Garcia,* Assistant Solicitor General, and *Christopher L. Morano,* Chief State's Attorney of Connecticut, and by the Attorneys General for their respective States as follows: *William H. Pryor, Jr.,* of Alabama, *Terry Goddard* of Arizona, *Bill Lockyer* of California, *Ken Salazar* of Colorado, *M. Jane Brady* of Delaware, *Thurbert E. Baker* of Georgia, *Mark J. Bennett* of Hawaii, *Lawrence G. Wasden* of Idaho, *Steve Carter* of Indiana, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran, Jr.,* of Maryland, *Thomas F. Reilly* of Massachusetts, *Mike McGrath* of Montana, *Jon Bruning* of Nebraska, *Wayne Stenehjem* of North Dakota, *Jim Petro* of Ohio, *Hardy Myers* of Oregon, *Henry Dargan McMaster* of South Carolina, *Larry Long* of South Dakota, and *Mark L. Shurtleff* of Utah; for Wayne County Prosecuting Attorney by *Timothy A. Baughman;* and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger* and *Charles L. Hobson.*

A brief of *amicus curiae* urging affirmance was filed for the National Association of Criminal Defense Lawyers by *Peter J. Henning, Robert Weisberg,* and *Lisa B. Kemler.*

killed. Respondent was arrested in connection with the shooting and was charged with open murder. At the close of the prosecution's case in chief and outside the hearing of the jury, defense counsel moved for a directed verdict of acquittal as to first-degree murder, arguing that there was insufficient evidence of premeditation and deliberation. The trial judge stated:

> "'[M]y impression at this time is that there's not been shown premeditation or planning in the, in the alleged slaying. That what we have at the very best is Second Degree Murder. . . . I think that Second Degree Murder is an appropriate charge as to the defendants. Okay.'" 292 F. 3d, at 508.

Before court adjourned, the prosecutor asked to make a brief statement regarding first-degree murder the following morning. *Ibid.* The trial judge agreed to hear it.

When the prosecution made the statement, however, defense counsel objected. The defense argued that the court had granted its motion for a directed verdict as to first-degree murder the previous day, and that further prosecution on that charge would violate the Double Jeopardy Clause. *Ibid.* The judge responded, "'Oh, I granted a motion but I have not directed a verdict.'" *Id.*, at 509. He noted that the jury had not been informed of his statements, and said that he would reserve a ruling on the matter. Subsequently, he decided to permit the charge of first-degree murder to be submitted to the jury. *Ibid.*

The jury convicted respondent of first-degree murder, and respondent appealed. *Ibid.* The Michigan Court of Appeals reversed, concluding that the trial judge had directed a verdict on the charge and that the Double Jeopardy Clause prevented respondent's prosecution for first-degree murder. *People* v. *Vincent*, 215 Mich. App. 458, 546 N. W. 2d 662 (1996). The Michigan Supreme Court reversed. It noted that "a judge's characterization of a ruling and the form of

the ruling may not be controlling" for purposes of determining whether a ruling terminated jeopardy. *People* v. *Vincent,* 455 Mich. 110, 119, 565 N. W. 2d 629, 632 (1997) (citing *United States* v. *Martin Linen Supply Co.,* 430 U. S. 564, 571, n. 9 (1977)). The State Supreme Court then reviewed the context and substance of the trial judge's comments, and concluded that the comments were not sufficiently final to constitute a judgment of acquittal terminating jeopardy. After the Michigan Supreme Court's decision, respondent discovered that the Clerk had made the following entry on the docket sheet: "'Motions by all atts for directed verdict. Court amended c[oun]t: 1 open murder to 2nd degree murder.'" 292 F. 3d, at 512; see also Tr. of Oral Arg. 7. Respondent moved the State Supreme Court to reconsider its judgment in light of this statement. The motion was denied without opinion. Judgt. order reported at 456 Mich. 1201, 568 N. W. 2d 670 (1997).

Respondent sought a writ of habeas corpus from the United States District Court for the Eastern District of Michigan. That court determined that respondent's prosecution for first-degree murder violated the Double Jeopardy Clause, and it granted his petition. App. to Pet. for Cert. 78a. The United States Court of Appeals for the Sixth Circuit affirmed, 292 F. 3d 506 (2002), and this petition ensued.

## II

A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U. S. C. § 2254(d). The double jeopardy claim in respondent's habeas petition arises out of the same set of facts upon which he based his direct appeal, and the State Supreme Court's holding that no double jeopardy violation occurred therefore constituted an adjudication of this claim on the merits. Thus, under § 2254(d), respondent is not entitled to relief unless he can demonstrate that the state court's adjudication of his claim:

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

"(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Although the Court of Appeals recited this standard, 292 F. 3d, at 510, it proceeded to evaluate respondent's claim *de novo* rather than through the lens of § 2254(d), apparently because it "agree[d] with the district court that whether the state trial judge acquitted [respondent] of first-degree murder is a question of law and not one of fact." *Id.*, at 511. The Court of Appeals did not consider whether the Michigan Supreme Court's decision was "contrary to" or an "unreasonable application of" our clearly established precedents, or whether it was "based on an unreasonable determination of the facts." Instead, the Court of Appeals declared:

"'[W]e are not bound by the holding of the Michigan Supreme Court that the trial judge's statements did not constitute a directed verdict under Michigan law. Instead, we must examine the state trial judge's comments to determine whether he made a ruling which resolved the factual elements of the first-degree murder charge.'" *Ibid.*

The Court of Appeals then concluded that, in its judgment, the state trial court's actions "constituted a grant of an acquittal on the first-degree murder charge such that jeopardy attached," *id.*, at 512, and affirmed.

This was error. As noted above, under § 2254(d) it must be shown that the Michigan Supreme Court's decision was either contrary to, or an unreasonable application of, this Court's clearly established precedents, or was based upon an unreasonable determination of the facts. The parties do not dispute the underlying facts, and respondent is therefore

entitled to habeas relief *only* if he can meet one of the two bases for relief provided in § 2254(d)(1). We will address these bases in turn.

First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams* v. *Taylor*, 529 U. S. 362, 405–406 (2000). See also *Early* v. *Packer*, 537 U. S. 3, 7–8 (2002) *(per curiam)*. Here, the Michigan Supreme Court identified the applicable Supreme Court precedents, *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564 (1977), and *Smalis* v. *Pennsylvania*, 476 U. S. 140 (1986), and "reaffirm[ed] the principles articulated" in those decisions. *People* v. *Vincent*, 455 Mich., at 121, 565 N. W. 2d, at 633. Moreover, the Michigan Supreme Court properly followed *Martin Linen* by recognizing that the trial judge's characterization of his own ruling is not controlling for purposes of double jeopardy, and by inquiring into " 'whether the ruling of the [trial] judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.' " 455 Mich., at 119, 565 N. W. 2d, at 633 (citing *Martin Linen*, *supra*, at 571). Nowhere did the Michigan Supreme Court apply a legal standard contrary to those set forth in our cases. Nor did that court confront a set of facts materially indistinguishable from those presented in any of this Court's clearly established precedents. In *Smalis* and *Martin Linen*, unlike in the present case, the trial courts not only rendered statements of clarity and finality but also entered formal orders from which appeals were taken. 476 U. S., at 142; 430 U. S., at 566.

Second, respondent can satisfy § 2254(d) if he can demonstrate that the Michigan Supreme Court's decision involved

an "unreasonable application" of clearly established law. As we have explained:

> "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. See *Bell* v. *Cone*, 535 U. S. 685, 698–699 (2002); *Williams, supra,* at 411. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner." *Woodford* v. *Visciotti,* 537 U. S. 19, 24–25 (2002) *(per curiam).*

Here, having recognized that, under *Martin Linen,* the trial judge's characterization of his own ruling was not controlling for purposes of double jeopardy, the court went on to examine the substance of the judge's actions, to determine whether "further proceedings would violate the defendant's double jeopardy rights." *People* v. *Vincent,* 455 Mich., at 119, 565 N. W. 2d, at 633. In doing so, the court noted the goal of the Double Jeopardy Clause to prevent against a second prosecution for the same offense after acquittal. *Id.,* at 120, n. 5, 565 N. W. 2d, at 633, n. 5; see also *Martin Linen, supra,* at 569 (noting controlling constitutional principle motivating Double Jeopardy Clause is prohibition against multiple trials and corresponding prevention of oppression by the Government); *Lockhart* v. *Nelson,* 488 U. S. 33, 42 (1988). The Michigan Supreme Court also considered *Smalis,* in which this Court stated:

> "[T]he Double Jeopardy Clause bars a postacquittal appeal by the prosecution not only when it might result in a second trial, but also if reversal would translate into 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged.'" 476 U. S., at 145–146 (quoting *Martin Linen, supra,* at 570).

Applying *Martin Linen* and *Smalis,* the State Supreme Court concluded that the judge's comments simply were not sufficiently final as to terminate jeopardy. *People* v. *Vincent,* 455 Mich., at 120, 565 N. W. 2d, at 633 ("[F]urther proceedings were not barred by the Double Jeopardy Clause"); *id.,* at 120, n. 5, 565 N. W. 2d, at 633, n. 5 ("[T]he principles embodied within [double jeopardy] protections were not violated"); *id.,* at 127, 565 N. W. 2d, at 636 (Because "the judge's comments . . . lacked the requisite degree of clarity and specificity," "the continuation of the trial . . . did not prejudice or violate the defendant's constitutional rights").

In reaching this conclusion, in addition to reviewing the context and substance of the trial judge's comments at length, the Michigan Supreme Court observed that "there was no formal judgment or order entered on the record." *Ibid.*[1] The Michigan Supreme Court noted that formal motions or rulings were not required to demonstrate finality as a matter of Michigan law, but cautioned that "the judgment must bear sufficient indicia of finality to survive an appeal." *Id.,* at 126, n. 9, 565 N. W. 2d, at 636, n. 9. The court listed factors that might be considered in evaluating finality as including "a clear statement in the record or a signed order," "an instruction to the jury that a charge or element of the charge has been dismissed by the judge," or "a docket entry." *Ibid.* "[E]ach case," the court said, "will turn on its own particular circumstances." *Ibid.* Even after the docket entry was brought to its attention, the State Supreme Court adhered to its original decision that, in this case, the trial

---

[1] The Michigan Supreme Court noted that the comments at issue were never discussed in front of the jury, *People* v. *Vincent,* 455 Mich., at 114–115, n. 1, 565 N. W. 2d, at 631, n. 1, and that the jury was never discharged, *id.,* at 121, n. 6, 565 N. W. 2d, at 633, n. 6. Moreover, the State Supreme Court noted, no trial proceedings took place with respondent laboring under the mistaken impression that he was not facing the possibility of conviction for first-degree murder. *Id.,* at 114–115, n. 1, 565 N. W. 2d, at 631, n. 1.

judge's comments were not sufficiently final to terminate jeopardy. This was not an *objectively unreasonable* application of clearly established law as defined by this Court. Indeed, numerous other courts have refused to find double jeopardy violations under similar circumstances.[2] Even if we agreed with the Court of Appeals that the Double Jeopardy Clause should be read to prevent continued prosecution of a defendant under these circumstances, it was at least reasonable for the state court to conclude otherwise.

Because respondent did not meet the statutory requirements for habeas relief, the judgment of the Court of Appeals is reversed.

*It is so ordered.*

---

[2] In *United States* v. *LoRusso,* 695 F. 2d 45, 54 (1982), for example, the Second Circuit held that double jeopardy did not bar continued prosecution on a charge when the judge withdrew an oral grant of a motion to dismiss a count "[w]here no judgment has been entered . . . and there has been no dismissal of the jury." In *United States* v. *Byrne,* 203 F. 3d 671 (2000), the Ninth Circuit found no double jeopardy violation where a trial judge orally granted a motion for acquittal, then agreed to consider an additional transcript. *Id.,* at 674 ("[T]here was no announcement of the court's decision to the jury, and the trial did not resume until" after the court had denied the defendant's motion). See also *United States* v. *Baggett,* 251 F. 3d 1087, 1095 (CA6 2001) (*"Byrne* and *LoRusso* stand for the proposition that an oral grant of a Rule 29 motion outside of the jury's presence does not terminate jeopardy, inasmuch as a court is free to change its mind prior to the entry of judgment"); *State* v. *Iovino,* 524 A. 2d 556, 559 (R. I. 1987) (distinguishing *United States* v. *Martin Linen Supply Co.,* 430 U. S. 564 (1977), on the grounds that in the case before it, "the jury remained impaneled to adjudicate lesser included charges, and that defendant was not faced with any threat of reprosecution beyond the jury already assembled to hear his case"); *State* v. *Sperry,* 149 Ore. App. 690, 696, 945 P. 2d 546, 550 (1997) ("[U]nder the circumstances presented here, the trial court could reconsider [its oral grant of a motion for a judgment of acquittal] and withdraw its ruling without violating" the Double Jeopardy Clause).