538 U. S. 1 (2003)
 JANETTE PRICE, WARDEN, PETITIONER
v.
DUYONN ANDRE VINCENT.
 No. 02-524.
 Supreme Court of United States.
 Argued April 21, 2003.
 Decided May 19, 2003.
 
 CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT.
 ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT.
 At respondent's trial on an open murder charge, defense counsel moved, at the close of the prosecution's case in chief and outside the jury's hearing, for a directed verdict of acquittal as to first-degree murder. The trial judge stated that second-degree murder was "`an appropriate charge,'" 292 F. 3d 506, 508, but agreed to hear the prosecutor's statement on first-degree murder the next morning. When the prosecution made the statement, defense counsel objected, arguing that the court had granted its directed verdict motion the previous day, and that further prosecution on first-degree murder would violate the Double Jeopardy Clause. The judge responded that he had granted the motion but had not directed a verdict, and noted that the jury had not been told of his statement. He subsequently submitted the first-degree murder charge to the jury, which convicted respondent on that charge. The Michigan Court of Appeals reversed, concluding that the Double Jeopardy Clause prevented respondent's prosecution for first-degree murder. Reversing in turn, the State Supreme Court determined that the trial judge's comments were not sufficiently final to terminate jeopardy. Respondent then notified the court of a docket sheet entry stating: "`1 open murder to 2nd degree murder,'" id., at 512. The Michigan Supreme Court refused to reconsider its decision. Respondent filed a federal habeas petition, and the Federal District Court granted the petition after concluding that continued prosecution for first-degree murder had violated the Double Jeopardy Clause. The Sixth Circuit affirmed.
 Held: Respondent did not meet the statutory requirements for habeas relief. The parties do not dispute the underlying facts, and respondent is therefore entitled to relief only if he can demonstrate that the state court's adjudication of his claim was "contrary to" or an "unreasonable application of" this Court's clearly established precedents. 28 U. S. C. §2254(d)(1). The Sixth Circuit Court of Appeals recited this standard but then forgot to apply it, reviewing the double jeopardy question de novo. This was error. A state court decision is "contrary to" this Court's clearly established law if it "applies a rule that contradicts the governing law set forth in [the Court's] cases" or if "it confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at" a different result. Williams v. Taylor, 529 U. S. 362, 405-406. Here, the Michigan Supreme Court identified, and reaffirmed the principles articulated in, the applicable precedents of United States v. Martin Linen Supply Co., 430 U. S. 564, and Smalis v. Pennsylvania, 476 U. S. 140. Nowhere did it apply a legal standard contrary to those set forth in this Court's cases, nor did it confront a set of facts materially indistinguishable from those in any case decided by this Court. The state court's decision therefore was not "contrary to" this Court's precedents. Nor was the state court's decision an "unreasonable application" of clearly established law. That court applied both Martin Linen and Smalis to conclude that the judge's comments were not sufficiently final to terminate jeopardy. In reaching this conclusion, in addition to reviewing the context and substance of the trial judge's comments at length, the court observed that there was no formal judgment or order entered on the record. While it noted that formal motions or rulings were not required to demonstrate finality as a matter of Michigan law, it cautioned that a judgment must bear sufficient indicia of finality and it concluded that sufficient indicia were not present here. This was not an objectively unreasonable application of clearly established Supreme Court law. Indeed, numerous courts have refused to find double jeopardy violations under similar circumstances. Even if this Court agreed with the Sixth Circuit that the Double Jeopardy Clause should be read to prevent continued prosecution under these circumstances, it was at least reasonable for the state court to conclude otherwise. Pp. 3-8.
 292 F. 3d 506, reversed.
 REHNQUIST, C. J., delivered the opinion for a unanimous Court.
 CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.
 
 
 1
 The United States Court of Appeals for the Sixth Circuit granted habeas relief to respondent Duyonn Andre Vincent after concluding that the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment, barred his conviction for firstdegree murder. Vincent v. Jones, 292 F. 3d 506 (2002). Because this decision exceeds the limits imposed on federal habeas review by 28 U. S. C. §2254(d), we granted the petition for certiorari, 537 U. S. 1099 (2002), and now reverse.
 
 
 2
 * In an altercation between two groups of youths in front of a high school in Flint, Michigan, Markeis Jones was shot and killed. Respondent was arrested in connection with the shooting and was charged with open murder. At the close of the prosecution's case in chief and outside the hearing of the jury, defense counsel moved for a directed verdict of acquittal as to first-degree murder, arguing that there was insufficient evidence of premeditation and deliberation. The trial judge stated:
 
 
 3
 "`[M]y impression at this time is that there's not been shown premeditation or planning in the, in the alleged slaying. That what we have at the very best is Second Degree Murder.... I think that Second Degree Murder is an appropriate charge as to the defendants. Okay.'" 292 F. 3d, at 508.
 
 
 4
 Before court adjourned, the prosecutor asked to make a brief statement regarding first-degree murder the following morning. Ibid. The trial judge agreed to hear it.
 
 
 5
 When the prosecution made the statement, however, defense counsel objected. The defense argued that the court had granted its motion for a directed verdict as to first-degree murder the previous day, and that further prosecution on that charge would violate the Double Jeopardy Clause. Ibid. The judge responded, "`Oh, I granted a motion but I have not directed a verdict.'" Id., at 509. He noted that the jury had not been informed of his statements, and said that he would reserve a ruling on the matter. Subsequently, he decided to permit the charge of first-degree murder to be submitted to the jury. Ibid.
 
 
 6
 The jury convicted respondent of first-degree murder, and respondent appealed. Ibid. The Michigan Court of Appeals reversed, concluding that the trial judge had directed a verdict on the charge and that the Double Jeopardy Clause prevented respondent's prosecution for firstdegree murder. Michigan v. Vincent, 215 Mich. App. 458, 546 N. W. 2d 662 (1996). The Michigan Supreme Court reversed. It noted that "a judge's characterization of a ruling and the form of the ruling may not be controlling" for purposes of determining whether a ruling terminated jeopardy. People v. Vincent, 455 Mich. 110, 119, 565 N. W. 2d 629, 632 (1997) (citing United States v. Martin Linen Supply Co., 430 U. S. 564, 571, n. 9 (1977)). The State Supreme Court then reviewed the context and substance of the trial judge's comments, and concluded that the comments were not sufficiently final to constitute a judgment of acquittal terminating jeopardy. After the Michigan Supreme Court's decision, respondent discovered that the Clerk had made the following entry on the docket sheet: " `Motions by all atts for directed verdict. Court amended c[oun]t: 1 open murder to 2nd degree murder.'" 292 F. 3d, at 512; see also Tr. of Oral Arg. 7. Respondent moved the State Supreme Court to reconsider its judgment in light of this statement. The motion was denied without opinion. Judgt. order reported at 456 Mich. 1201, 568 N. W. 2d 670 (1997).
 
 
 7
 Respondent sought a writ of habeas corpus from the United States District Court for the Eastern District of Michigan. That court determined that respondent's prosecution for first-degree murder violated the Double Jeopardy Clause, and it granted his petition. App. to Pet. for Cert. 78a. The United States Court of Appeals for the Sixth Circuit affirmed, 292 F. 3d 506 (2002), and this petition ensued.
 
 II
 
 8
 A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U. S. C. §2254(d). The double jeopardy claim in respondent's habeas petition arises out of the same set of facts upon which he based his direct appeal, and the State Supreme Court's holding that no double jeopardy violation occurred therefore constituted an adjudication of this claim on the merits. Thus, under §2254(d), respondent is not entitled to relief unless he can demonstrate that the state court's adjudication of his claim:
 
 
 9
 "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
 
 
 10
 "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."
 
 
 11
 Although the Court of Appeals recited this standard, 292 F. 3d, at 510, it proceeded to evaluate respondent's claim de novo rather than through the lens of §2254(d), apparently because it "agree[d] with the district court that whether the state trial judge acquitted [respondent] of first-degree murder is a question of law and not one of fact." Id., at 511. The Court of Appeals did not consider whether the Michigan Supreme Court's decision was "contrary to" or an "unreasonable application of" our clearly established precedents, or whether it was "based on an unreasonable determination of the facts." Instead, the Court of Appeals declared:
 
 
 12
 "`[W]e are not bound by the holding of the Michigan Supreme Court that the trial judge's statements did not constitute a directed verdict under Michigan law. Instead, we must examine the state trial judge's comments to determine whether he made a ruling which resolved the factual elements of the first-degree murder charge.'" Ibid.
 
 
 13
 The Court of Appeals then concluded that, in its judgment, the state trial court's actions "constituted a grant of an acquittal on the first-degree murder charge such that jeopardy attached," id., at 512, and affirmed.
 
 
 14
 This was error. As noted above, under §2254(d) it must be shown that the Michigan Supreme Court's decision was either contrary to, or an unreasonable application of, this Court's clearly established precedents, or was based upon an unreasonable determination of the facts. The parties do not dispute the underlying facts, and respondent is therefore entitled to habeas relief only if he can meet one of the two bases for relief provided in §2254(d)(1). We will address these bases in turn.
 
 
 15
 First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U. S. 362, 405-406 (2000). See also Early v. Packer, 537 U. S. 3, 7-8 (2002) (per curiam). Here, the Michigan Supreme Court identified the applicable Supreme Court precedents, United States v. Martin Linen Supply Co., 430 U. S. 564 (1977), and Smalis v. Pennsylvania, 476 U. S. 140 (1986), and "reaffirm[ed] the principles articulated" in those decisions. People v. Vincent, 455 Mich., at 121, 565 N. W. 2d, at 633. Moreover, the Michigan Supreme Court properly followed Martin Linen by recognizing that the trial judge's characterization of his own ruling is not controlling for purposes of double jeopardy, and by inquiring into "`whether the ruling of the [trial] judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" 455 Mich., at 119, 565 N. W. 2d, at 633 (citing Martin Linen, supra, at 571). Nowhere did the Michigan Supreme Court apply a legal standard contrary to those set forth in our cases. Nor did that court confront a set of facts materially indistinguishable from those presented in any of this Court's clearly established precedents. In Smalis and Martin Linen, unlike in the present case, the trial courts not only rendered statements of clarity and finality but also entered formal orders from which appeals were taken. 476 U. S., at 142; 430 U. S., at 566.
 
 
 16
 Second, respondent can satisfy §2254(d) if he can demonstrate that the Michigan Supreme Court's decision involved an "unreasonable application" of clearly established law. As we have explained, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. See Bell v. Cone, 535 U. S. 685, 699 (2002); Williams, supra, at 411. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner." Woodford v. Visciotti, 537 U. S. 19, 24-25 (2002) (per curiam).
 
 
 17
 Here, having recognized that, under Martin Linen, the trial judge's characterization of his own ruling was not controlling for purposes of double jeopardy, the court went on to examine the substance of the judge's actions, to determine whether "further proceedings would violate the defendant's double jeopardy rights." People v. Vincent, 455 Mich., at 119, 565 N. W. 2d, at 633. In doing so, the court noted the goal of the Double Jeopardy Clause to prevent against a second prosecution for the same offense after acquittal. Id., at 120, n. 5, 565 N. W. 2d, at 633, n. 5; see also Martin Linen, supra, at 569 (noting controlling constitutional principle motivating Double Jeopardy Clause is prohibition against multiple trials and corresponding prevention of oppression by the Government); Lockhart v. Nelson, 488 U. S. 33, 42 (1988). The Michigan Supreme Court also considered Smalis, in which this Court stated:
 
 
 18
 "the Double Jeopardy Clause bars a postacquittal appeal by the prosecution not only when it might result in a second trial, but also if reversal would translate into `further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged.'" 476 U. S., at 145-146 (quoting Martin Linen, supra, at 570).
 
 
 19
 Applying Martin Linen and Smalis, the State Supreme Court concluded that the judge's comments simply were not sufficiently final as to terminate jeopardy. People v. Vincent, 455 Mich., at 120, 565 N. W. 2d, at 633 ("[F]urther proceedings were not barred by the Double Jeopardy Clause"); id., at 120, n. 5, 565 N. W. 2d, at 633, n. 5 ("[T]he principles embodied within [double jeopardy] protections were not violated"); id., at 127, 565 N. W. 2d, at 636 (Because "the judge's comments . . . lacked the requisite degree of clarity and specificity," "the continuation of the trial . . . did not prejudice or violate the defendant's constitutional rights").
 
 
 20
 In reaching this conclusion, in addition to reviewing the context and substance of the trial judge's comments at length, the Michigan Supreme Court observed that "there was no formal judgment or order entered on the record." Ibid.[1] The Michigan Supreme Court noted that formal motions or rulings were not required to demonstrate finality as a matter of Michigan law, but cautioned that "the judgment must bear sufficient indicia of finality to survive an appeal." Id., at 126, n. 9, 565 N. W. 2d, at 636, n. 9. The court listed factors that might be considered in evaluating finality as including "a clear statement in the record or a signed order," "an instruction to the jury that a charge or element of the charge has been dismissed by the judge," or "a docket entry." Ibid. "[E]ach case," the court said, "will turn on its own particular circumstances." Ibid. Even after the docket entry was brought to its attention, the State Supreme Court adhered to its original decision that, in this case, the trial judge's comments were not sufficiently final to terminate jeopardy. This was not an objectively unreasonable application of clearly established law as defined by this Court. Indeed, numerous other courts have refused to find double jeopardy violations under similar circumstances.[2] Even if we agreed with the Court of Appeals that the Double Jeopardy Clause should be read to prevent continued prosecution of a defendant under these circumstances, it was at least reasonable for the state court to conclude otherwise.
 
 
 21
 Because respondent did not meet the statutory requirements for habeas relief, the judgment of the Court of Appeals is reversed.
 
 
 22
 
 It is so ordered.
 
 
 
 
 Notes:
 
 
 [1]
 The Michigan Supreme Court noted that the comments at issue were never discussed in front of the jury,People v. Vincent, 455 Mich., at 114-115, n. 1, 565 N. W. 2d, at 631, n. 1, and that the jury was never discharged, id., at 121, n. 6, 565 N. W. 2d, at 633, n. 6. Moreover, the State Supreme Court noted, no trial proceedings took place with respondent laboring under the mistaken impression that he was not facing the possibility of conviction for first-degree murder. Id., at 114-115, n. 1, 565 N. W. 2d, at 631, n. 1.
 
 
 [2]
 InUnited States v. LoRusso, 695 F. 2d 45, 54 (1982), for example, the Second Circuit held that double jeopardy did not bar continued prosecution on a charge when the judge withdrew an oral grant of a motion to dismiss a count "[w]here no judgment has been entered . . . and there has been no dismissal of the jury." In United States v. Byrne, 203 F. 3d 671 (2000), the Ninth Circuit found no double jeopardy violation where a trial judge orally granted a motion for acquittal, then agreed to consider an additional transcript. Id., at 674. ("[T]here was no announcement of the court's decision to the jury, and the trial did not resume until" after the court had denied the defendant's motion). See also United States v. Baggett, 251 F. 3d 1087, 1095 (CA6 2001) ("Byrne and LoRusso stand for the proposition that an oral grant of a Rule 29 motion outside of the jury's presence does not terminate jeopardy, inasmuch as a court is free to change its mind prior to the entry of judgment"); State v. Iovino, 524 A. 2d 556, 559 (R. I. 1987) (distinguishing United States v. Martin Linen Supply Co., 430 U. S. 564 (1977), on the grounds that in the case before it, "the jury remained impaneled to adjudicate lesser included charges, and that defendant was not faced with any threat of reprosecution beyond the jury already assembled to hear his case"); State v. Sperry, 149 Ore. App. 690, 696, 945 P. 2d 546, 550 (1997) ("[U]nder the circumstances presented here, the trial court could reconsider [its oral grant of a motion for a judgment of acquittal] and withdraw its ruling without violating" the Double Jeopardy Clause).