**Demetrius J. GRANT Appellant,**

v.

**William STICKMAN; The District Attorney of Allegheny County; The Attorney General of the Commonwealth of Pennsylvania Appellees.**

**No. 04–1245.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Feb. 11, 2005.

Decided Feb. 18, 2005.

Thomas N. Farrell, Pittsburgh, PA, for Appellant.

Ronald M. Wabby, Jr., Pittsburgh, PA, for Appellees.

Before BARRY, FUENTES, and VAN ANTWERPEN, Circuit Judges.

## OPINION

VAN ANTWERPEN, Circuit Judge.

We have before us a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Appellant Demetrius Grant contends that his trial counsel, Jerome DeRiso, offered ineffective assistance by failing to call two alibi witnesses to testify on his behalf at his criminal trial. At Grant's proceedings under Pennsylvania's Post Conviction Relief Act, the Court of Common Pleas of Allegheny County found that DeRiso could not find any viable witnesses, and therefore the decision not to call anyone was justified as trial strategy. Grant argues that this determination was unreasonable in light of the evidence presented, and that DeRiso's decision not to · call these witnesses was really based on an erroneous assumption either that the state court did not have subpoena power over the witnesses, or that Grant was responsible for paying for the travel and lodging expenses associated with bringing the witnesses to Pennsylvania. He further claims that the state court's determination was contrary to federal law as established by Supreme Court precedent. On these grounds, he seeks a writ of habeas corpus.

## I. FACTUAL AND PROCEDURAL HISTORY

Because we write only for the parties, we limit our discussion to those facts pertinent to our decision. Appellant Grant was charged in the Court of Common Pleas of Allegheny County, Pennsylvania with: two counts of robbery, 18 Pa. Cons.Stat. § 3701(a)(1)(i) or (ii); one count of robbery of a motor vehicle, 18 Pa. Cons.Stat. § 3702; two counts of theft by unlawful taking, 18 Pa. Cons.Stat. § 3921(a); two counts of receiving stolen property, 18 Pa. Cons.Stat. § 3925; two counts of terroristic threats, 18 Pa. Cons.Stat. § 2706; and a single count of unlawful restraint, 18 Pa. Cons.Stat. § 2902. All of the charges stemmed from the armed robbery of Hasan Stevens and his father, Dwayne Watkins.

At around 8:15 p.m. on January 31, 1995, Hasan Stevens was on his way to his father's house in Wilkinsburg, Pennsylvania, when a hooded man dressed in black approached him in the driveway. The man placed a gun to Stevens' throat and ordered him to go inside. Dwayne Watkins was inside the house and approached the pair when he saw what was happening. The gunman pushed Watkins to the floor and ordered Stevens to tie Watkins' hands with the sash from his robe. The gunman then ripped the phone cord from the wall and bound Watkins' legs and hands.

The gunman took cash and jewelry from the two men, then forced Stevens up to the second floor to steal more items from the dressers. During this time he questioned Stevens as to whether he had seen the news about a recent jailbreak. The gun-

man implied or stated that he was the man who had escaped from prison.

While Stevens and the gunman were upstairs, Watkins managed to escape. When the gunman and Stevens returned downstairs and discovered that Watkins was missing, the gunman rushed outside with Stevens' keys and drove away in his car. Appellant Grant, who had recently escaped from prison, was eventually apprehended and charged with the robbery.

Represented by court-appointed counsel Jerome DeRiso, Grant proceeded to trial on March 6, 1996. Grant testified on his own behalf, but called no alibi witnesses. A jury found Grant guilty of all charges on March 7, 1996. On May 21, 1996, the Honorable Gerard M. Bigley sentenced Grant to two consecutive terms of 10 to 20 years of incarceration for the robbery counts. At the sentencing hearing, DeRiso acknowledged that Grant no longer wanted him as counsel.

On June 18, 1996, newly-appointed counsel Frank Reilly filed a timely notice of appeal on Grant's behalf. After receiving an extension, Reilly filed a concise statement of matters to be raised on appeal on November 1, 1996. The statement raised only an issue concerning sentencing. On November 5, 1996, Reilly wrote to Grant, explaining:

> I was unable to make a strong case on the alibi issue at this time and due to Judge Bigley's deadline for filing the Statement, I went with a challenge to the discretionary aspect of your sentence. I still think that, if the appropriate parties are willing to support your alibi defense, a PCRA proceeding will get you back into court.

(Appellant Brief at 5.) On June 30, 1997, the Superior Court vacated Grant's sentence and remanded for a new sentencing hearing. However, on July 14, 1997, Grant was sentenced to the same term that Judge Bigley had previously imposed. The new sentence was affirmed on appeal.

On September 23, 1999, Grant filed a *pro se* petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons.Stat. §§ 9541–9546, raising numerous issues. At the heart of this petition was Grant's claims that (1) his trial counsel was ineffective because he failed to call certain alibi witnesses as a result of his misunderstanding of the law, and (2) his appellate counsel was ineffective because he failed to raise the trial counsel's ineffectiveness on appeal.

Judge Bigley appointed Diana Stravoloukis to represent Grant on September 27, 1999. On November 30, 1999, Stravoloukis filed a petition to withdraw as counsel along with a "no-merit" letter. The next day, Judge Bigley granted the motion to withdraw and issued a notice of intent to dismiss. Grant filed an objection to the notice of intent to dismiss, and the Commonwealth filed an answer to the PCRA petition on February 15, 2000, which essentially agreed with Stravoloukis' position. On March 15, 2000, Judge Bigley dismissed the PCRA petition.

Grant filed a *pro se* appeal on October 1, 2001, but the Superior Court affirmed the judgment of the Court of Common Pleas. Grant's *pro se* petition to the Supreme Court of Pennsylvania was denied on May 22, 2002.

On October 11, 2002, Grant filed a timely *pro se* petition for a writ of habeas corpus in the United States District Court for the Western District of Pennsylvania. On November 12, 2003, United States Magistrate Judge Amy R. Hay issued a report recommending that the petition be dismissed and the application for certificate of appealability be denied. On January 6, 2004, District Judge William L. Standish adopted the Magistrate Judge's

opinion and issued a final order dismissing the petition and denying the certificate of appealability.

On January 26, 2004, Grant filed a Notice of Appeal and followed up with an Application for Certificate of Appealability with this Court on April 30, 2004. On July 19, 2004, this Court granted the Certificate of Appealability on the sole claim that "trial counsel was ineffective for failing to call alibi witnesses." (Appellant App. at 44.)

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over the appeal by virtue of the grant of the Certificate of Appealability and 28 U.S.C. §§ 1291 and 2253. The District Court did not hold an evidentiary hearing but instead relied exclusively on the state court record; therefore, our review is plenary. *Lambert v. Blackwell,* 387 F.3d 210, 231 (3d Cir.2004).

## III. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits a federal court's habeas corpus review of a state court decision. *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). AEDPA provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Grant argues that the state court's rejection of his denial of effective assistance of counsel claim was the result of an unreasonable determination of the facts and did not comport with federal law as determined by the Supreme Court.

We begin by examining the state court's decision. In his opinion denying Grant's PCRA claim, Judge Bigley stated:

> On the issue of the alleged failure to present alibi witnesses, *the record is clear that trial counsel attempted to contact proposed alibi witnesses and, after speaking to a number of those people, concluded that there were no viable alibi witnesses to present at trial. As a result, trial counsel's actions were as a result of a rational and strategic decision.* The same can be said of Attorney Reilly, who handled the petitioner's direct appeal. The petitioner's own filings with this court show that Attorney Reilly informed the petitioner that he could not make any appealable issues on the failure to call alibi witnesses. Counsel is never ineffective for failing to make a frivolous objection or motion, or failing to raise issues in post verdict motions or on appeal.

(Appellant App. at 114)(emphasis added.)

The state court relied at least partially on PCRA-counsel Stravoloukis' no-merit letter, in which she stated:

> Attorney DeRiso did, in fact, attempt to contact any possible alibi witnesses. The result was that he couldn't find any. Attorney DeRiso provided Mr. Grant with the dates and times he telephoned

**594**

or talked with these alleged witnesses, and the gist of their conversations. Based upon these conversations, Mr. DeRiso, Esquire, concluded that there were no viable alibi witnesses and was forced to proceed without them.

(Appellant App. at 61.)

The Superior Court affirmed the trial court's finding that DeRiso attempted to contact proposed alibi witnesses, that he spoke to several of these witnesses, that he concluded that there were no viable alibi witnesses to present at trial, and that therefore his actions were the result of a rational and strategic decision. (Appellant App. at 195.)

Grant argues that the state court's determination that DeRiso was acting pursuant to a strategy was unreasonable. To support his claim, Grant points to affidavits which he claims demonstrate that alibi witnesses were available to testify. Grant also argues that DeRiso's statements at the trial show that DeRiso did not call witnesses either because he believed he was powerless to do so, or because Grant could not afford to do so.

**A. The State Court Decision Was Based on a Reasonable Determination of the Facts**

In *Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir.2004), this Court explained the difference between a challenge to a state court's individual factual determinations as governed by section 2254(e)(1), and a challenge to the state court's determination based on the totality of the evidence as governed by section 2254(d)(2):

> Section 2254(d)(2) mandates the federal habeas court to assess whether the state court's determination was reasonable or unreasonable given that evidence. If the state court's decision based on such a determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is warranted.

Within this overarching standard, of course, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision. Here, section 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence.

*Lambert*, 387 F.3d at 235. In the case before us, we must decide whether the state court was unreasonable in its determination that DeRiso's failure to call witnesses was based on a trial strategy. *See* 28 U.S.C § 2254(d)(2). In doing so, we presume that the state court's subsidiary determinations are correct unless Grant rebuts that presumption with clear and convincing evidence. *See id.* at (e)(1).

**1. *Grant Fails to Establish that Viable Witnesses Were Available***

Grant challenges the state court's finding that DeRiso found no viable witnesses by presenting the affidavits of two people who were willing to testify at his trial. In their affidavits, Grant's aunt, Phyllis Thompson, and her daughter, Angela Eighannam, state that they were available and willing to testify that Grant was with them at Thompson's home on January 31, 1995, from 6:00 p.m. until 9:00 p.m. However, their statements contradict Grant's trial testimony. On cross-examination, Grant responded to the Prosecutor's questions with the following:

Q  Who were you with on January 31st of 1995 down in Atlanta?

A I was with myself.

Q  Well, where were you staying?

A I was staying at 11 Clay Street and the Kirkwood area in Atlanta, Georgia.

Q Were you with anybody?

A No ma'am.

Q So, you told us before that you went down there because you had family down there, but you went down but didn't stay with any of them; is that what you're saying?

A That's what I'm saying ma'am.

Q But your family at some point saw you down in Atlanta; is that correct?

A That's correct.

Q Who would have seen you down in Atlanta?

A My aunt.

Q What is her name?

A Phyllis Thompson.

Q Anybody else see you down there?

A No.

Q No. Any friends you have down there?

A No. Just some people who I had met down there previously.

(Appellant App. at 331.) According to Grant, Thompson saw him at some point while he was in Georgia, but he was alone on the day of the robbery. Furthermore, Grant testified that no other family members saw him in Georgia, even though his Aunt's daughter (presumably his ˙cousin), stated that she did see Grant.

Although they may have been willing to testify, Grant has failed to establish that Thompson and Eighannam were "viable witnesses," as their affidavits contradict Grant's trial testimony. Therefore, these affidavits do not support Grant's assertion that DeRiso found viable witnesses to testify at his trial.

### 2. DeRiso's Statements at Trial Are Not Dispositive

Grant also argues that DeRiso's comments at trial demonstrate that he knew witnesses were available, but failed to call them because he erroneously assumed that he did not have subpoena power or that he could not compel the state to pay for the witnesses' transportation. While we agree that DeRiso made several comments that suggested to the trial court and jury that he did not bring witnesses forward because he did not believe that he had subpoena power, or because he felt that no money was available to bring them to Pennsylvania, we disagree that this amounts to clear and convincing evidence that Grant found witnesses to testify. It is possible that DeRiso's statements were intended to provide an excuse for Grant's failure to present alibi witnesses.

For the same reason, the trial statements do not undermine the state court's overall determination. In light of PCRA-counsel Stravoloukis' letter to the state court and the fact that Thompson and Eighannam would have contradicted Grant's testimony had they been called to the stand, we cannot say that the state court was unreasonable in its determination that DeRiso did not call alibi witnesses because he found none who were viable.

### B. The State Court Judgment Comported with Clearly Established Law

Having determined that the state court's determination of the facts was reasonable, we must now decide whether the decision comported with clearly established law. The Supreme Court explained that "a decision by a state court is 'contrary to' [the Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or if it 'confronts

a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Price v. Vincent*, 538 U.S. 634, 640, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003)(*quoting Williams v. Taylor*, 529 U.S. 362, 405–406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

Furthermore, "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular … case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Lambert*, 387 F.3d at 234 (*quoting Williams*, 529 U.S. at 407, 120 S.Ct. 1495)(alterations in the original).

In *Strickland v. Washington*, the Supreme Court set the parameters for evaluating an ineffective assistance of counsel claim:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court further explained that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690–91, 104 S.Ct. 2052.

Although the state court did not cite *Strickland*, it rejected Grant's PCRA claim with an explanation that "trial counsel's actions were as a result of a rational and strategic decision." (Appellant App. at 114.) This is clearly consistent with *Strickland'*s holding that, to succeed on a denial of access claim, a "defendant must show that counsel's performance was deficient," 466 U.S. at 686, 104 S.Ct. 2052, and that strategic choices are virtually unchallengeable, *id.* at 690, 104 S.Ct. 2052.

Nor can we say that the state court applied the law in an objectively unreasonable manner. To the contrary, the state court's determination that Grant cannot make an ineffective assistance of counsel claim because his attorney's failure to call a witness was based on trial strategy is supported by Supreme Court precedent. *See id.* at 689, 104 S.Ct. 2052 ("Judicial scrutiny of counsel's performance must be highly deferential. … [T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'").

For the reasons stated above, we affirm the District Court's order denying Grant's petition for a writ of habeas corpus.