John Elmer **WOODARDS**, Petitioner-Appellee,

v.

**H. J. CARDWELL**, Warden, Ohio Penitentiary, Respondent-Appellant.

No. 19912.

United States Court of Appeals, Sixth Circuit.

Aug. 17, 1970.

---

12. Although the wisdom of the deduction has been challenged vigorously, *see, e. g.*, Wilson, The Western Hemisphere Trade Corporation Act: The Need for Reassessment, 1968, 2 J.Law & Econ.Develop. 208, 226–29, such criticism applies equally to the deduction as part of federal and territorial tax law, and does not establish that the deduction is particularly incompatible with a separate territorial tax. We may not rewrite provisions of the territorial tax law because we think they should not exist in the federal system, thereby opposing our judgment to that of Congress.

Niki Z. Schwartz, Cleveland, Ohio (Bernard A. Berkman, Cleveland, Ohio, on the brief), for appellee.

Before WEICK, CELEBREZZE and BROOKS, Circuit Judges.

BROOKS, Circuit Judge.

This is an appeal by the respondent-appellant, H. J. Cardwell, Warden, Ohio Penitentiary, who has custody of John Elmer Woodards, petitioner-appellee, a convicted murderer, who, following an evidentiary hearing in the District Court, has been granted a writ of habeas corpus.

In 1963 petitioner was convicted of first degree murder of a woman 83 years of age. The jury verdict was without a recommendation of mercy and under Ohio law, Ohio Revised Code § 2901.01, a mandatory death penalty was imposed. The conviction was affirmed, State v. Woodards, 6 Ohio St.2d 14, 215 N.E. 2d 568 (1966), cert. denied, 385 U.S. 930, 87 S.Ct. 289, 17 L.Ed.2d 212 (1966).

At the trial two prospective jurors were excused for cause when they expressed some objection to the imposition of the death penalty.[1]  This was error.

Leo J. Conway, Columbus, Ohio (Paul W. Brown, Atty. Gen., Columbus, Ohio, on the brief), for appellant.

1. Gilbert A. Fairchild, venireman.

"Q. (by the Court) Let me ask you this broad question: Do you know of any reason why you could not sit here and listen to the evidence and render a fair and impartial verdict?

"A. (by Fairchild) I guess it's proper to mention this that I—by hearsay I understand that in a first degree murder case a person who does not approve or believe in capital punishment should not sit on a jury, is that correct?

"Q. That's a correct statement?

"A. That is the case.

"Q. In other words, you have a belief and you are convinced that in your own conscience you do not believe in capital punishment?

"A. That is correct.

"Q. Is that because of a religious—

"A. No.

"Q. —basis?

"A. No.

"Q. Have you had that conviction for any length of time?

"A. Oh, I'd say five years.

The Court: "Mr. Mikus (the prosecutor), do you care to inquire?

Mr. Mikus: "We do not care to inquire.

The Court: "Well, I believe I will just excuse you, Mr. Fairchild. The Court respects your convictions and your stand on this and, for that reason, you would be disqualified and the Court will excuse you.

\*        \*        \*        \*        \*

Robert A. Cobbs, venireman.

"Q. (by the Court)  Well, let me put it to you another way.  Maybe we can get an expression from you this way.

"Would it embarrass you to vote the death penalty in a proper case if you were selected in this case?

"A. (by Cobbs)  I believe it would a little bit.

"Q. Now, the next question:  Even though you were, if you were embarrassed to vote the death penalty, would you, in a proper case, vote a death penalty?

"A. Yes, I suppose I would.

The rule is clearly set forth in Witherspoon v. Illinois, 391 U.S. 510, 521–523, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) as follows:

> "Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected." (Footnotes omitted).

■■■ The District Court correctly interpreted the rule in holding that the death sentence imposed by the improperly selected trial jury could not be executed. *Witherspoon*, however, does not invalidate the guilty verdict. It holds only that the death sentence imposed by an improperly selected jury cannot be executed. Witherspoon v. Illinois, supra, p. 523, n. 21, 88 S.Ct. 1770. The respondent argues that we cannot reach the Witherspoon issue raised by the petitioner as the petitioner has not exhausted state remedies as required by Title 28 U.S.C. § 2254(b) (c). Petitioner did appeal his conviction to the Ohio Supreme Court but the Witherspoon issue was not raised. State v. Woodards, supra. However, it is provided by Title 28 U.S.C. § 2254(b) that state remedies need not be exhausted where "there is either an absence of available state corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." This Court has on several occasions considered this point with regard to Ohio appellate procedures. See, Allen v. Perini, 424 F.2d 134 (6th Cir. 1970); Coley v.

Alvis, 381 F.2d 870 (6th Cir. 1967). In light of the Ohio Supreme Court's decision in State v. Duling, 21 Ohio St. 2d 13, 254 N.E.2d 670 (1970), we hold it would be futile for petitioner Woodards to have proceeded through the State appellate process again.

The other crucial contention advanced by the petitioner is that it was error of constitutional proportions for the trial judge to compel him to be handcuffed and shackled throughout his trial. The District Court, following a full evidentiary hearing, held that the shackling was a violation of petitioner's constitutional rights under the due process clause of the Fourteenth Amendment and concluded that he was denied a fair trial. We agree.

It is undisputed that petitioner was shackled, by handcuffs around his wrists attached to a restraining belt around his waist, from the beginning to the end of his nine day trial. Only on one occasion when petitioner took the stand was one of the handcuffs removed. It also is not disputed that, while some effort was made to keep the jurors from constant awareness of the manner in which petitioner was shackled, they could not avoid observing his wearing of the restraints.

At the beginning of the trial defense counsel requested that the shackles be removed and the following colloquy occurred:

> [Counsel:] "May his handcuffs be removed, Your Honor?
>
> "The Court: It will be up to the Sheriff.
>
> [Counsel:] "If the Court please, may the record, at this time, show that I object to the defendant's being shackled in the courtroom.

The Court: "Well, I believe in view of his answers, which are not too clear, really, and since this is a serious matter, Mr. Cobbs, you understand that if you have any reservations about capital punishment, then, perhaps, you should not sit on this jury.

"Do you have some reservations about capital punishment?

Mr. Cobbs: "Well, there must be because—

The Court: "Well, I think under those circumstances, this prospective juror should be excused at this point.

"You may be excused."

"The Court: The Court's ruling on the request to unshackle the defendant is that it is a question of security. It all depends on what the Sheriff's wishes are in the matter. Has the Sheriff decided what—

"A Deputy: We wish for the prisoner to remain shackled, Your Honor.

[Counsel:] "Well, at least can the belt be removed if the handcuffs remain on?

"The Court: As I say, it is a question of security. It is up to the Sheriff.

[Counsel:] "Do you object to that?

"A Deputy: We do request the same security we have on him at this time, Your Honor.

"The Court: Very well, so ordered.

[Counsel:] "If the Court please, he is going to remain here for days. You can't expect him to remain in that position.

"The Court: The Court has made a ruling. You may have your exception for the record, Mr. Adams."

This brief exchange on the shackling of petitioner is the only discussion of this important issue preserved by the record of the trial court. Based on this sparse record, the Supreme Court of Ohio stated that a prisoner may be shackled when such precaution is shown to be necessary to prevent violence or escape, and held that under the circumstances of this case, the trial court had not committed error by abusing its discretion when it required the shackling of petitioner, citing Tunget v. Commonwealth, 303 Ky. 834, 198 S.W.2d 785 (1946), cert. denied, 331 U.S. 833, 67 S.Ct. 1514, 91 L.Ed.2d 1847; State v. Coursolle, 255 Minn. 384, 97 N.W.2d 472, 476 (1959).

■■ It is the accepted rule in federal habeas corpus proceedings that state factual determinations not fairly supported by the record cannot be conclusive of federal rights. Fiske v. Kansas, 274 U.S. 380, 385, 47 S.Ct. 655, 71 L.Ed. 1108 (1926); Blackburn v. Alabama, 361 U.S. 199, 208–209, 80 S.Ct. 274, 4 L.Ed.

2d 242 (1960). And that where the material facts were not adequately developed at the state level, a federal court must grant an evidentiary hearing to a habeas corpus applicant. Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The District Court properly held a full evidentiary hearing in this case.

At the hearing it was developed that petitioner was in custody for more than six months prior to trial. During this time he was in the Lorain County jail and Lima State Hospital. While in the hospital for a period of at least 60 days, he lived in a dormitory with other prisoners. He was taken to Cleveland, Ohio on one occasion to undergo psychiatric examination and was alone with the doctor in the doctor's second floor office. At no time while petitioner was in custody did he engage in any act of violence or in any other conduct that would suggest he was uncontrollable.

For the purposes of the evidentiary hearing, the deposition of the state trial judge was taken and introduced. One of his reasons, as he recalled some five years after the trial, for keeping petitioner in shackles was the report of a deputy sheriff that certain small miscellaneous items, a blank key, a piece of metal, a needle and thread, a pencil, and a T-shirt were found in petitioner's cell and could have been employed for an escape attempt. After hearing the evidence on this issue, however, the District Court found as a fact that the objects were not being used to attempt an escape, but were being used to construct perfectly innocent items of handicraft for petitioner's wife. It was also found as a fact that petitioner's conduct at all times prior to trial, including the two trips to Lima State Hospital and the one trip to Cleveland for psychiatric examination, and his conduct during the trial, provided no justification for the use of shackles during trial. It was further found as a fact that the state trial judge did not exercise his judicial discretion but rather deferred to the wishes of the sheriff who, at the commencement of

the trial, requested that the restraints be retained. And the trial judge, by his own admission, never considered reasonable alternative methods to the shackling of petitioner in order to provide for the security of the courtroom.

■ All authorities agree that it is prejudicial for a defendant on trial to be shackled in the courtroom. Loux v. United States, 389 F.2d 911 (9th Cir. 1968). The rule that a prisoner brought into court for trial is entitled to appear free from all bonds or shackles is an important component of a fair and impartial trial. And shackles should never be permitted except to prevent the escape of the accused, to protect everyone in the courtroom, and to maintain order during the trial. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); Way v. United States, 285 F.2d 253 (10th Cir. 1960); Odell v. Hudspeth, 189 F.2d 300 (10th Cir. 1951), cert. denied, 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed. 656.

■■ It is also well established that the use of handcuffs and shackles is ordinarily left to the sound discretion of the trial court. Loux v. United States, supra; Guffey v. United States, 310 F.2d 753 (10th Cir. 1962); DeWolf v. Waters, 205 F.2d 234 (10th Cir. 1953), cert. denied, 346 U.S. 837, 74 S.Ct. 56, 98 L.Ed. 358; Gregory v. United States, 365 F.2d 203 (8th Cir. 1966), cert. denied, 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676. And sound discretion has long meant a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. Langnes v. Green, 282 U.S. 531, 534, 51 S.Ct. 243, 75 L.Ed. 520 (1931). And this requires a knowledge and understanding of the material circumstances surrounding the matter calling for the exercise of sound discretion.

Applying these rules to the findings of fact made by the District Court, it must be concluded the District Court cor-

rectly held that it was an abuse of judicial discretion to compel the petitioner to be shackled during his trial. As noted by the District Court, it is regrettable that more facts surrounding the decision to keep petitioner shackled during trial were not preserved in the record of the trial court. It is the better practice to hold a hearing when such an issue is presented and have the facts made a part of the record. Loux v. United States, supra. It is understandably difficult for witnesses to recall circumstances that are necessary for a decision when a collateral attack is made on a judgment of conviction rendered many years ago.

The District Court, in its order granting a conditional writ of habeas corpus, considered 120 days as a reasonable period of time for the State of Ohio to take further action, if it should so desire, before petitioner's release would become final. We affirm the order of the District Court and the 120 days shall run from the issuance of the mandate.