David Patrick LAKIN, Petitioner,

v.

Wayne W. STINE, Respondent.

No. 96–75828.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 25, 2005.

David Lakin, Munising, MI, pro se.

Margaret S. Raben, Gurewitz & Raben, Detroit, MI, for Petitioner.

Federal Defender, Federal Defender Office, Detroit, MI, Diane L. Galbraith, K. Davison Hunter, William C. Campbell, Michigan Department of Attorney General Habeas Corpus Division, Lansing, MI, Jerrold E. Schrotenboer, Jackson County Prosecutor's Office, Jackson, MI, for Respondent.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1]

TARNOW, District Judge.

### I. *Introduction*

This case is before the Court on remand from the Sixth Circuit Court of Appeals. The Court of Appeals reversed the previous judgment of this Court granting habeas corpus relief to Petitioner David Patrick Lakin. The Court of Appeals remanded the case "for further proceedings on the remaining claims advanced in the petition." *Lakin v. Stine,* 80 Fed.Appx. 368, 378–79 (6th Cir.2003). Petitioner has filed a supplemental brief. The Court finds that the state court's finding that Mr. Lakin's right to a fair trial was not violated when he was compelled to stand trial in leg irons was an unreasonable application of clearly established Supreme Court precedent. However, the Court finds that this constitutional trial error was harmless.

---

1. Staff Attorney Mary Beth Collery provided quality research assistance.

The Court further finds that the remaining claims advanced in the petition do not warrant habeas corpus relief. The Court shall therefore deny habeas relief.

## II. *Background*

On June 26, 1990, following a jury trial in Jackson County Circuit Court, Mr. Lakin, and four other inmates, were convicted of kidnapping, prison escape, assault of a prison employee and unlawfully driving away an automobile. On August 29, 1990, the court sentenced Mr. Lakin to twenty-five to fifty years imprisonment for kidnapping, three and one-third to five years imprisonment for prison escape, three to four years for assaulting a prison employee, and three and one-third to five years for unlawfully driving away an automobile, all to be served consecutively to the sentences pursuant to which he was incarcerated at the time of the escape.

Mr. Lakin appealed his conviction to the Michigan Court of Appeals. The Michigan Court of Appeals affirmed Mr. Lakin's convictions. *People v. Lakin*, No. 132531 (Mich.Ct.Ap.1993).

Mr. Lakin filed an application for leave to appeal to the Michigan Supreme Court. The Court denied leave to appeal. *People v. Lakin*, 444 Mich. 896, 511 N.W.2d 690 (1993).

On May 16, 1996, Mr. Lakin filed the pending petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He presented the following claims in his petition:

A. The petitioner was denied his constitutional rights to (1) the effective assistance of counsel, and (2) the representation of counsel, in violation of U.S. Const. Am. VI and XIV.

B. The petitioner was denied his constitutional rights to a fair and impartial trial, in violation of the Sixth and Fourteenth [Due Process] Amendments to the Constitution of the United States, when the trial court prevented him from raising and presenting his 'co[m]pulsion-duress-necessity' defenses at his trial.

C. The petitioner was deprived of his constitutional right to a fair and impartial trial under the Sixth and Fourteenth [Due Process and Equal Protection] Amendments to the United States Constitution, when the statute entitled him to 20 peremptory jury challenges, but where the new court rules limited his peremptory challenges to 7, and where he was not satisfied with the jury.

D. The petitioner was denied his constitutional rights to a fair and impartial trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, when the trial court refused to instruct the jury on requested lesser included offenses to kidnapping and assault on a prison employee.

E. The Petitioner Was Denied A Fair And Impartial Trial In Violation Of United States Constitution Amendments Vi And Xiv [Due Process], Where The Jurors Saw Him In Full Shackles And Where He Was Forced To Undergo Trial In Leg Irons.

This Court granted conditional habeas relief, holding that Mr. Lakin's waiver of counsel did not comply with the requirements of *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Prior to trial, Mr. Lakin requested new counsel several times because counsel would not meet with him privately. The court refused to appoint new counsel. Mr. Lakin proceeded at trial *in propria persona*.

The Sixth Circuit Court of Appeals reversed the decision of this Court and remanded the matter to the District Court for further proceedings. *Lakin v. Stine*,

2000 WL 1256900, *5 (6th Cir. July 13, 2000).[2]

On remand, this Court granted habeas corpus relief, finding that the trial court erred in failing to allow Mr. Lakin to present a full defense by refusing to instruct the jury on the defense of duress, and that the error was not harmless.

The Sixth Circuit Court of Appeals reversed the decision of this Court and remanded the matter to this Court for further proceedings on the remaining three claims advanced in the petition. *Lakin*, 80 Fed.Appx. at 378–79.

Petitioner has filed a supplemental memorandum in support of his habeas petition.

## III. *Standard of Review*

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

---

**2.** If Petitioner files a petition for a writ of certiorari to the United States Supreme Court regarding this claim, the Supreme Court's recent Order denying certiorari in a case presenting a nearly identical claim to Petitioner's denial of counsel claim may be relevant. In *People v. Russell*, 471 Mich. 182, 684 N.W.2d 745 (2004), the Michigan Supreme Court reversed the defendant's convictions where the trial court required defendant to proceed *in propria persona*. The defendant expressed dissatisfaction with his appointed attorney. The trial court refused to appoint a new attorney and gave defendant a choice between proceeding to trial with his assigned attorney or proceeding *in propria persona*. The defendant expressly rejected self-representation and stated that he did not "feel comfortable" with his appointed attorney's representation. The trial court advised defendant he could either accept the appointed attorney or represent himself. Despite defendant's exhortations to the court that he needed competent counsel, the trial court empaneled a jury and the defendant represented himself at trial. *Id.* at 185–86, 684 N.W.2d 745.

The Michigan Supreme Court held that, because the defendant had not waived his right to the assistance of counsel and expressly rejected self-representation, defendant was denied counsel at a critical state of his criminal proceeding, and reversed his convictions. *Id.* at 193–94, 684 N.W.2d 745. The United States Supreme Court denied the state's petition for a writ of certiorari. *Michigan v. Russell*, —— U.S. ——, 125 S.Ct. 965, 160 L.Ed.2d 910 (Jan. 18, 2005) (No. 04–531).

The Supreme Court's denial of a petition for certiorari in *Mitchell v. Mason*, 325 F.3d 732 (6th Cir.2003), *cert. denied* —— U.S. ——, 125 S.Ct. 861, 160 L.Ed.2d 824 (Jan. 10, 2005), may also be relevant should Petitioner file a petition for a writ of certiorari. In *Mitchell v. Mason*, 257 F.3d 554 (6th Cir. 2001) (*Mitchell I*), the Sixth Circuit Court of Appeals held that a defendant has an absolute right to consult with counsel during pre-trial preparation and deprivation of this right amounts to a complete denial of counsel resulting in *per se* prejudice. Respondent filed a petition for certiorari. The Supreme Court granted the petition for a writ of certiorari, vacated the judgment, and remanded the case to the Sixth Circuit Court of Appeals for further consideration in light of *Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). On remand, the Sixth Circuit Court of Appeals again concluded that a defendant has an absolute right to consult with counsel during pre-trial preparation and that the petitioner was denied the effective assistance of counsel because he was denied access to counsel during pre-trial preparation. *Mitchell v. Mason*, 325 F.3d 732 (6th Cir.2003) (*Mitchell II*). The dissenting judge in *Mitchell II*, District Judge Carr, stated that his reasons for dissenting were fully expressed in *Mitchell I*. *Mitchell II*, 325 F.3d at 749. In his original dissent, District Judge Carr relied for support upon the Sixth Circuit's decision in *Lakin*, 2000 WL 1256900 (6th Cir. July 13, 2000). District Judge Carr stated that "[w]hile the opportunity to confer outside the presence ... of other persons is clearly conducive to a meaningful attorney-client relationship and effective communication," such an opportunity is not required by the Constitution. *Mitchell I*, 257 F.3d at 575 n. 1.

merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

■■■ A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410–11, 120 S.Ct. 1495.

## IV. *Analysis*

### A. *Shackles and Leg Irons*

Mr. Lakin claims that the trial court violated his right to a fair trial and due process when the jury repeatedly saw Mr. Lakin in full shackles, and he was forced to wear leg irons during the trial.

Mr. Lakin properly presented the claim that he was unfairly shackled and placed in leg irons during trial to the Michigan Court of Appeals on direct appeal. The Michigan Court of Appeals denied this claim. The following excerpt represents the entirety of the Michigan Court of Appeals' treatment of this claim:

We have carefully considered the remaining issues raised by defendants. However, we conclude that they require neither reversal nor discussion.

*People v. Lakin,* slip op. at 3.

■■■ Where a state court, although deciding a claim, does not offer some explanation of its decision, a federal court must conduct an independent review of the state court's decision. This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir.2000). "Yet, any independent review that is conducted must remain deferential to the state court's decision and cannot amount to a 'full *de novo* review of the claims.'" *Joshua v. DeWitt,* 341 F.3d 430, 447–48 (6th Cir.2003), *quoting Harris,* 212 F.3d at 943. Because the state court failed to offer any explanation for its ruling denying Petitioner's shackling claim, this Court will proceed with an independent review of this claim "'through the lens of § 2254(d).'" *Id.* at 448, *quoting Price v. Vincent,* 538 U.S. 634, 639, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003).

■■■ The right to a fair trial is a "fundamental right secured by the Fourteenth Amendment." *Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). A fair and impartial trial requires that a defendant be afforded a presumption of innocence. *Kennedy v. Cardwell,* 487 F.2d 101, 104 (6th Cir.1973),

citing *Massey v. Moore*, 348 U.S. 105, 108, 75 S.Ct. 145, 99 L.Ed. 135 (1954). "To implement the presumption of innocence, courts must be alert to factors that may undermine the fairness of the fact-finding process." *Estelle*, 425 U.S. at 503, 96 S.Ct. 1691. Certain procedures pose such a threat to the "fairness of the fact-finding process" that they call for "close judicial scrutiny." *Id.* at 504, 96 S.Ct. 1691.

■■■■ Shackling a defendant is an "inherently prejudicial practice" which should be subject to close judicial scrutiny and "permitted only where justified by an essential state interest specific to each trial." *Holbrook v. Flynn*, 475 U.S. 560, 568–69, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). When a Petitioner challenges a courtroom arrangement as inherently prejudicial, "the question must not be whether jurors actually articulated a consciousness of some prejudicial effect, but rather whether an 'unacceptable risk is presented of impermissible factors coming into play.'" *Id.* at 570, 106 S.Ct. 1340, *citing Estelle*, 425 U.S. at 505, 96 S.Ct. 1691.

■■■■ The presumption of innocence—"that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law" *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (internal quotation omitted)—generally entitles a criminal defendant "to the physical *indicia* of innocence." *Kennedy v. Cardwell*, 487 F.2d 101, 104 (6th Cir. 1973). The "garb of innocence," *Id.* at 105, entitles a prisoner brought into court for trial "to appear free from all bonds or shackles" unless shackles are required "to prevent the escape of the accused, to protect ·everyone in the courtroom, and to maintain order during trial." *Woodards v. Cardwell*, 430 F.2d 978, 982 (6th Cir.1970). Shackling casts a defendant in the jury's eyes as a "dangerous, untrustworthy and pernicious individual from the very start of

the trial." *Kennedy*, 487 F.2d at 111. In addition to threatening the presumption of innocence afforded all defendants, shackling detracts from the dignity and decorum of the judicial process:

> [Shackling a defendant] offends not only judicial dignity and decorum, but also that respect for the individual which is the lifeblood of the law.

*Illinois v. Allen*, 397 U.S. 337, 350, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J. concurring).

■■■■ The decision whether to shackle a defendant rests within the trial court's sound discretion, and should never be used absent a *"clear showing* of necessity." *Kennedy*, 487 F.2d at 107, 111 (emphasis in original).

> And sound discretion has long meant a discretion that is not exercised arbitrarily or willfully but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.

*Woodards*, 430 F.2d at 981, *citing Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520 (1931).

■■■■ The reasons for a trial judge's decision to shackle a defendant during trial should be placed on the record to allow meaningful review of that decision. *Id.* The Sixth Circuit Court of Appeals has held:

> the physical indicia of innocence are so essential to a fair trial that the better practice is to hold a hearing so that factual disputes may be resolved and evidence of the facts surrounding the decision are made a part of the record.

*Kennedy*, 487 F.2d at 107.

Further, the Sixth Circuit Court of Appeals has identified the following factors a trial court may consider in determining

whether an essential state interest compels the use of shackles:

First, is there factual support for the trial court's assertions pertaining to the record of the defendant, the desperate situation of the defendant, and his temperament and personal characteristics? Second, is the state courtroom and courthouse physically laid out in such a manner that less drastic means of security would suffice? Third, is the physical condition of the defendant such as to reduce or eliminate the likelihood of escape or acts of violence, making less drastic security measures the most reasonable course? And fourth, does the trial court have available less prejudicial but adequate means of security, i.e., guards?

*Id.* at 110–11.

▇▇ Mr. Lakin was jointly tried with four co-defendants. Mr. Lakin and two of his co-defendants Chipman and Onifer proceeded *pro se* at trial. At the conclusion of a pre-trial evidentiary hearing, Defendant Onifer moved to have the defendants' leg irons removed for trial.[3] Defendant Onifer stated that, while the handcuffs and belly chains had been removed for pre-trial motion proceedings, the leg irons had not. He requested that the leg irons also be removed for trial. Defendant Onifer set forth the following well-reasoned argument in support of his request:

I think with the leg irons in front of a jury they may feel that we are extremely violent people and it may prejudice us in front of the jury with the leg irons on. I ask the Court that we be stripped completely of all shackles. There's ample guards here and have been. They have been good enough to carry us in and out and we have caused no problems with any of the courtroom proceedings,

and they have been good to us so I would like to have a motion to have the leg irons off. I think maybe if the Court would like to hear from any of them if there is a security reason or that we're bad guys that the newspapers are making us out to be, then they have an opportunity to do so.

Tr., 6/20/90, pp. 201–02.

The trial court did not immediately respond to or address the motion to remove leg shackles. Defendant Onifer proceeded to present a motion regarding the admissibility of prior convictions. After addressing other issues, the trial court returned to the issue of leg shackles and the following colloquy ensued:

The Court: While I was talking I might—I request some indication from the security officers as to their feeling about the removal of leg irons. Who's the head honcho so-to-speak.

Corrections Officer Dilley: Your Honor, by nature of the charges alone constitutes an escape risk and by having five or six corrections staff in here it's rather conspicuous to a to a civilian jury what these people are, you know -

The Court: How do you feel about leg irons?

CO Dilley: I think they should remain on, Your Honor.

The Court: All right, then, they will remain on.

Def. Onifer: Okay, we will take exception to that for the record under the due process clause of the Fourteenth Amendment, the Sixth Amendment, due process under the Article 1 Sec-

---

**3.** Earlier in the pre-trial evidentiary hearing, the Court held that any argument or objection asserted by a single defendant would be considered asserted as to all defendants and "be equally applicable to each and be protected as to the rights of each." Tr., 6/20/00, p. 175.

tion 17 and Article 1 Section 20 of the Michigan Constitution.

Tr., 6/20/90, pp. 204–05.

The foregoing exchange shows that the trial court judge failed to apprehend that the issue with which he was presented threatened the presumption of innocence, the enforcement of which "lies at the foundation of the administration of our criminal law." *Winship*, 397 U.S. at 363, 90 S.Ct. 1068. The trial court did not exercise its discretion in denying Petitioner's request that the shackles be removed. Instead, he simply deferred to the Corrections Officer's judgment.

The trial court judge failed to undertake the careful, considered analysis required by Supreme Court precedent. *Holbrook* requires a judge to subject a request that a defendant remain shackled during trial to close judicial scrutiny to determine whether shackling is required by an essential state interest in a particular case. 475 U.S. at 568–69, 106 S.Ct. 1340. The Supreme Court did not entrust the protection of the right to the presumption of innocence to state corrections officers who are neither trained nor duty bound to protect a defendant's constitutional right to a fair trial. *Courts*, not corrections officers, are charged with evaluating "the likely effects of a particular procedure, based on reason, principle, and common human experience." *Estelle*, 425 U.S. at 504, 96 S.Ct. 1691. In this case, the concern for the garb of innocence is particularly salient, where the shackles could be judged by the jury to incriminate Petitioner not only generally, but also specifically with respect to the offense for which he was standing trial, escape.

The factors the trial judge failed to consider in deciding to shackle defendant are many. The trial judge did not consider whether any less prejudicial means of ensuring courtroom security were available. The trial court judge did not inquire whether additional court security officers could be provided for this multi-defendant trial. The Sixth Circuit Court of Appeals favors the use of guards for security purposes:

> The use of guards for security purposes, when wisely employed, provides the best means for protecting a defendant's fair trial right and only in rare cases would greater security precautions be warranted. Since guards can be strategically placed in the courtroom when more than normal security is needed and can be hidden in plainclothes, the jury never need be aware of the added protection so that no prejudice would adhere to the defendant.

*Kennedy*, 487 F.2d at 108–09 (footnote omitted).

Providing extra guards where additional security is warranted may adequately address the security need "without the need for the much more drastic and prejudicial step of shackling." *Id.* at 109. That it may be more convenient for prison officials to shackle a defendant rather than provide additional guards is insufficient to justify shackling. *Estelle*, 425 U.S. at 505, 96 S.Ct. 1691. Shackling should be permitted only if it is necessary to ensure courtroom security not when it is the most convenient means of doing so.

The trial court failed to consider whether the physical layout of the courtroom counseled in favor of shackling the defendant. The trial court also failed to consider Petitioner's conduct during prior court proceedings. The trial court failed to give consideration to any factors other than the corrections officer's statement that Petitioner should remain shackled. In short, rather than *exercise* his discretion, the trial court judge simply *deferred* to the judgment of the corrections officer. In *Woodards*, the Sixth Circuit Court of Appeals held that a trial court judge abused his

discretion when he similarly deferred to the wishes of the sheriff who requested that a defendant remain shackled during trial, rather than requiring an articulated justification for the shackles and then exercising his discretion based upon the information gathered. 430 F.2d at 981–82.

Prior to issuing its first dispositive Opinion in this case, the Court referred the matter to a Magistrate Judge for a Report and Recommendation. That Report and Recommendation, which was rejected by the Court in the Court's first opinion granting habeas relief, recommended that the Court conclude that Petitioner failed to prove that his constitutional rights were violated by the shackling of his legs at trial. The Court shall briefly discuss the Report and Recommendation with regard to this claim to further explain the Court's ruling on this issue. In his Report and Recommendation, the Magistrate Judge reasoned, in pertinent part:

> Judge Noble requested to hear from the "head honcho" of the security officers as to whether the leg-irons should be removed. Evid. Hrg., p. 204. In response to the trial court's inquiry, Corrections Officer Dilley stated that the leg-irons should remain on. Then, based on this extremely thin submission, Judge Noble denied defendant's motion. *Id.* There was no evidence of any assaultive behavior, displays of explosive temper or any attempted flight during the pretrial proceedings. Yet, the charges against petitioner did include escape, kidnapping, and assaulting a prison employee. Petitioner also had nine prior felony convictions, including felonious assault, two armed robberies and two prior escapes. In addition, petitioner was representing himself, which necessitated that he walk around the courtroom to make an opening statement and question witnesses. Moreover, there was a total of five defendants in this case and evidence that they had worked in conjunction to escape on an earlier occasion. Finally, given the nature of the charges, the jury would have learned of the fact petitioner was a prisoner in the course of the trial, whether the leg shackles were used or not.

> Unfortunately Judge Noble did not state on the record his reasons for denying the motion. He was aware of the charges against petitioner, and he was advised by a Corrections Officer who had custody of petitioner that the leg-irons should remain on. While many judges would conclude that the circumstances were hardly so extraordinary as to warrant the use of leg irons before the jury, in matters involving security, federal courts should be cautious in second guessing state trial judges. On the present facts, it cannot be said as a matter of constitutional law that Judge Noble abused his discretion in ruling that petitioner was to remain in leg-irons during the trial. Also, while petitioner asserts that manacling him "surely had a profound impact on the jury considering the nature of the charges lodged against [him]," in light of the strength of the government's case, it was likely to have had a much reduced impact compared to the impact of the substantial evidence of petitioner's guilt.

Report and Recommendation, pp. 34–35.

The Magistrate Judge's discussion regarding shackling Mr. Lakin may have proven to be a defensible analysis had it been employed by the trial court judge. However, it was not. The Magistrate Judge constructed an analysis of the factors weighing in favor of and against shackling Mr. Lakin and superimposed that analysis on the trial judge's decision. The trial court record evidences no such careful analysis by the trial court judge.

This Court concludes that the trial court and Michigan Supreme Court failed to

subject the claim that Mr. Lakin should be tried in leg irons to close scrutiny and failed to make any determination that the leg irons were compelled by an essential state interest. Thus, the Court finds that the Michigan Court of Appeals' decision that no constitutional violation occurred when the trial court compelled Mr. Lakin to wear leg irons during his trial was an unreasonable application of *Holbrook.* However, this finding does not end the Court's inquiry. The Court must determine whether this error is subject to a harmless-error analysis and, if so, whether the error was harmless.

The Supreme Court has not directly addressed whether requiring a defendant to stand trial in shackles is susceptible to a harmless-error analysis, but the Court has cited with approval the application of the harmless-error analysis to cases where a defendant appeared at trial in identifiable prison clothes. *Estelle,* 425 U.S. at 506, 96 S.Ct. 1691. In addition, while the Court has found shackling a defendant during trial to be inherently prejudicial, the Court has not found that shackling a defendant *necessarily* deprives the defendant of a fair trial. Instead, the Court requires that such a practice be subject to close judicial scrutiny. *Id.* 425 U.S. at 504, 96 S.Ct. 1691. Thus, the Court finds that a trial court's error in requiring a defendant to remain shackled during trial is subject to a harmless-error analysis. *Accord Dyas v. Poole,* 317 F.3d 934, 936 (9th Cir.2003) ("When a defendant has been unconstitutionally shackled, the court must determine whether the defendant was prejudiced."); *Wilkerson v. Whitley,* 16 F.3d 64, 68 (5th Cir.1994) (holding that while the trial court was not justified in shackling defendant during trial, the error was harmless where the jury was aware of the defendant's status as a convicted felon and the evidence against the defendant was overwhelming); *Hameed v. Mann,* 57 F.3d 217, 222 (2d Cir.

1995) (applying harmless-error analysis to unnecessary imposition of physical restraints).

In a habeas corpus proceeding, to determine whether a constitutional trial error is harmless, a federal court must decide whether the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), *quoting Kotteakos v. U.S.,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). If a federal judge in a habeas proceeding "is in grave doubt about whether a trial error of federal law has substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the Petitioner must win." *O'Neal v. McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (internal quotation omitted). The harmless error analysis articulated in *Brecht* applies even if a federal habeas court is the first to review for harmless error. *Gilliam v. Mitchell,* 179 F.3d 990, 995 (6th Cir.1999).

The Supreme Court has cited with approval cases in which the court refused to find error when an accused is tried in jail clothes where "the accused is being tried for an offense committed in confinement, or in an attempted escape." *Estelle,* 425 U.S. at 507, 96 S.Ct. 1691. In this case, Petitioner was on trial for, *inter alia,* prison escape. Thus, even had Petitioner not been tried in shackles, the jury would have learned that Petitioner was incarcerated based upon the charges against him and the testimony adduced at trial. There is, of course, the danger that the jury could view the shackles as incriminating Mr. Lakin specifically with respect to the offense of escape. Nevertheless, balancing that danger against the overwhelming evidence of Petitioner's guilt presented at trial, the Court finds that the shackling of

Mr. Lakin did not have "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623, 113 S.Ct. 1710 (internal quotation omitted).

Mr. Lakin also claims that his right to a fair trial was violated because the jurors repeatedly viewed him outside the courtroom in full shackles, *i.e.* belly chains, lockbox, and shackles, and, prior to the start of trial, viewed him in state prison garb. *See* Tr., 6/21/90. This issue was raised by defendant Onifer on behalf of all of the defendants.

In contrast to a situation where a defendant is forced to stand trial while wearing state prison garb or while shackled, when a defendant is seen by a jury in prison garb outside the courtroom as part of routine security measures, such as transporting the defendant to and from the courtroom, "[d]efendants are required to show actual prejudice" to establish a constitutional violation. *United States v. Alsop*, 12 Fed.Appx. 253, 258 (6th Cir.2001). The instant case, however, does not merely involve incidental viewing of Petitioner in shackles and prison garb by the jury while he was being transported to and from the courtroom. Instead, the jury viewed Petitioner in full shackles and prison garb outside the courtroom *and* in leg shackles inside the courtroom. This double exposure complicates and makes more troubling Mr. Lakin's being viewed outside the courtroom in shackles and prison garb.

Although the Court finds that the trial court should have taken greater pains to avoid exposing jurors to Mr. Lakin outside the courtroom, the Court concludes that, given the nature of the charges against Petitioner, which clearly informed the jury of his status as a prisoner, and the overwhelming evidence against him, Mr. Lakin's right to a fair trial was not violated when the jury viewed him outside the courtroom in shackles and prison garb.

## B. *Peremptory Challenges*

 Mr. Lakin argues that the trial court violated his right to a fair and impartial jury when it limited him to seven peremptory challenges, rather than allowing him the twenty peremptory challenges he claims were required under Michigan statute.

 Peremptory challenges are not required by the Constitution. *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). "Because peremptory challenges are a creature of statute and are not required by the Constitution, … it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise." *Id.* at 89, 108 S.Ct. 2273. "The 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Id.*

In this case, Mr. Lakin argues that he did not receive "that which state law provides," when the trial court allowed him seven peremptory challenges rather than twenty. Mich. Comp. Law § 769.13 provides that a defendant put on trial for an offense punishable by life imprisonment shall be permitted twenty peremptory challenges. Michigan Court Rule 6.412(E)(1) provides that, when five or more defendants are being tried jointly, as in Mr. Lakin's case, each defendant is entitled to seven peremptory challenges. The trial court followed M.C.R. 6.412(E)(1), rather than the statutory authority, and permitted each defendant only seven peremptory challenges.

 Under Michigan law, a Michigan Court Rule which conflicts with a statute takes precedence over the statute in matters pertaining to practice and procedure controls. *Atlantic Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 209 (6th

Cir.1996); *People v. Conat,* 238 Mich.App. 134, 162, 605 N.W.2d 49 (1999). Thus, under Michigan law, Petitioner was entitled to only seven peremptory challenges. He, therefore, received the number of peremptory challenges which the state law provides and is not entitled to habeas corpus relief with respect to this claim.

### C. *Jury Instructions*

Finally, Mr. Lakin argues that the trial court erred in refusing to instruct the jury on the lesser included offenses of assault and battery and forcible confinement.

■■■■■ An erroneous jury instruction warrants habeas corpus relief only where the instruction " 'so infected the entire trial that the resulting conviction violates due process.' " *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) *(quoting Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right' ". *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Further, "[i]t is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) *(quoting Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). The Sixth Circuit has held that where the state court has "reviewed a defendant's request for a lesser included offense instruction and concluded that it was not warranted by the evidence elicited at trial, that conclusion is axiomatically correct, as a matter of state law." *Bagby v. Sowders,* 894 F.2d 792, 795 (6th Cir.1990). Under such circumstances, a federal court will overturn a state court's decision only where "a funda-mental miscarriage of justice is found to have resulted from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law." *Id.*

■■■ Mr. Lakin argues that assault and battery is a lesser included offense of assault on a prison employee and that the trial court violated his right to a fair trial and due process in refusing his request for such an instruction. Under Michigan law, the crime of assaulting a prison employee is defined as follows:

> A person lawfully imprisoned in a jail, other place of confinement established by law for any term, or lawfully imprisoned for any purpose at any other place ... who, without being discharged from the place of confinement ... through the use of violence, threats of violence or dangerous weapons, assaults an employee of the place of confinement or other custodian knowing the person to be an employee or custodian or breaks the place of confinement and escapes, or breaks the place of confinement although an escape is not actually made is guilty of a felony.

Mich. Comp. Laws § 750.197c.

■■■ Michigan courts have held that the Michigan State Legislature intended this statute to elevate the crime of assault of a prison guard to felony status. *People v. Boyd,* 102 Mich.App. 112, 115, 300 N.W.2d 760 (1980). Thus, "a prisoner who assaults a prison employee may be charged with a felony." *Id.* at 116, 300 N.W.2d 760.

Mr. Lakin argues that the jury also should have been instructed regarding the misdemeanor offense of assault. Michigan's misdemeanor assault statutes provide:

> Sec. 81. Assault and assault and battery. Any person who shall be con-

victed of an assault or an assault and battery where no other punishment is prescribed shall be guilty of a misdemeanor.

Sec. 81a. Any person who shall assault another without any weapon and inflict serious or aggravated injury upon the person of another without intending to commit the crime of murder, and without intending to do great bodily harm less than the crime of murder, shall be guilty of a misdemeanor. . . .

Mich. Comp. Laws § 750.81 & 750.81a.

The trial court concluded that the evidence did not support an instruction on the lesser offense of assault and battery. Corrections Officer Sheila Duncan, one of the officers who was assaulted, testified that she and fellow Corrections Officer Denny Lee Norman, drove up to Petitioner and his four co-defendants as they were climbing through a barbed-wire fence. Officer Duncan testified that the vehicle they were driving was marked with a State of Michigan seal. She further testified that she and Officer Norman were wearing their full uniforms and jackets with the State of Michigan seal. No evidence was presented from which a reasonable juror could conclude that Mr. Lakin did not know that the Norman and Duncan were Corrections Officers. Therefore, no miscarriage of justice resulted from the state court's refusal to give the assault and battery instruction.

■ Next, Mr. Lakin claims that the trial court erred in refusing to give a forcible confinement instruction as a lesser included offense of kidnapping. Under Michigan law, the elements of kidnapping "are not easily set forth in a short, simple statement." *People v. Jaffray*, 445 Mich. 287, 296, 519 N.W.2d 108 (Mich.1994). Six forms of conduct fall under the statutory definition of kidnapping; each of those forms of conduct, separately, constitutes the crime of kidnapping. *Id.* at 296–97, 519 N.W.2d 108; Mich. Comp. Laws

§ 750.349. The statutory section relevant to the charge of kidnapping lodged against Mr. Lakin states:

[A] person can be convicted of kidnapping if it is proven beyond a reasonable doubt that he or she willfully, maliciously, and without lawful authority,

(a) forcibly or secretly confined or imprisoned any other person within this state against his will . . .

Mich. Comp. Laws § 750.349.

■ In addition, although not mentioned in the statute, Michigan courts have held that asportation is a required element of the crime of kidnapping by forcible confinement or imprisonment. *Id.* at 298, 519 N.W.2d 108. The element of asportation is "a judicially required element of the crime 'kidnapping by forcible confinement or imprisonment,' having been read into the statute to sustain its constitutionality by distinguishing true kidnaping from common-law false imprisonment and other lesser crimes." *Id.*

Petitioner argues that the trial court's failure to instruct the jury on the lesser offense of common-law forcible confinement resulted in manifest injustice. The jury instructions clearly and accurately instructed the jury regarding the required element of asportation. The jury was advised that the prosecution bore the burden of proving the element of asportation beyond a reasonable doubt and that the movement had to be independent of the crime of escape.

The Court concludes that, because the jury was correctly instructed that asportation was an element of kidnapping that must be proven beyond a reasonable doubt, the trial court's decision not to instruct the jury on common law forcible confinement did not "result in a fundamental miscarriage of justice likely to have resulted in the conviction of an innocent person." *Bagby*, 894 F.2d at 795. Accord-

ingly, Mr. Lakin is not entitled to habeas corpus relief with respect to his jury instruction claims.

### V. Conclusion

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED and the matter is DISMISSED WITH PREJUDICE.