PREGERSON, Circuit Judge,
concurring in part and dissenting in part:
“A rule ... declaring ‘prosecutor may hide, defendant must seek,’ is not tenable in a system constitutionally bound to accord defendants due process.”
Banks v. Dretke, 540 U.S. 668, 696, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004).
In the early morning hours of December 6,1987, in Phoenix, Arizona, two teenagers committed a horrible and senseless crime. Petitioner Sean Bernard Runningeagle and his codefendant, Corey Tilden, burglarized the home of Herbert and Jacqueline Williams. Herbert and Jacqueline Williams were present at the time of the burglary, and, in the course of the burglary, one of these two teenagers stabbed and killed the Williamses.
Runningeagle and Tilden were tried together in Maricopa County Superior Court. Both were convicted of two counts of first degree murder. At the sentencing hearing, the trial judge sentenced Tilden to life imprisonment but sentenced Runningeagle to death.[1] The judge’s decision to spare Tilden’s life was based primarily on the judge’s view that it was Runningeagle who stabbed the victims. What the trial judge did not have before her, and indeed no court has ever had before it, are the statements Tilden made about his role in the murders to his cellmate, Manuel Melendez. Prosecutors and police spoke with Melendez five times in the weeks leading up to Runningeagle’s trial, but *783 never provided Melendez’s potentially exculpatory statements to Runningeagle.
Runningeagle has diligently sought this information from prosecutors for more than twenty years, to no avail. On April 18, 1988, three months before trial, Runningeagle’s counsel filed a motion requesting that prosecutors provide “all material or information which tends to mitigate or negate [Runningeagle’s] guilt as to the offense charged, or which would tend to reduce [his] punishment therefor....” Despite this request, the prosecution failed to provide Melendez’s statements to Runningeagle.
In his state post-conviction review (“PCR”) proceedings, Runningeagle raised a Brady claim and asked for access to the court’s subpoena power and for an evidentiary hearing, so he could finally obtain Melendez’s statements. But the state PCR court summarily denied Runningeagle’s Brady claim, without first requiring prosecutors to disclose Melendez’s statements. The court based its denial on Arizona Rule of Criminal Procedure 32.1(e), which requires the petitioner to establish that “[n]ewly discovered material facts probably exist and such facts probably would have changed the verdict or sentence.” Ariz. R.Crim. P. 32.1(e) (emphasis added).
In his federal habeas proceedings, Runningeagle asked for discovery and an evidentiary hearing. Like the state PCR court, the district court denied Runningeagle’s Brady claim without first requiring prosecutors to disclose Melendez’s statements.[2] Runningeagle then appealed the district court’s denial of habeas relief to our court.
During oral argument before our court, counsel for the government acknowledged there may be a “Melendez File” containing exculpatory evidence that, to this day, has still not been disclosed to Runningeagle. Oral Argument Audio at 33:40-34:01; 36:28-37:44. The government attorney, however, took the remarkable position that Runningeagle was not entitled to this exculpatory information. Oral Argument Audio at 33:40-34:01; 36:28-37:44.
The majority opinion, like every court to have adjudicated Runningeagle’s claims, denies Runningeagle’s Brady claim without first requiring prosecutors to disclose Melendez’s statements. Maj. Op. at 773-74. In so holding, the majority opinion concludes that the state PCR court’s denial of Runningeagle’s Brady claim, without any discovery or evidentiary development, was not “contrary to” or an “unreasonable application” of clearly established federal law under 28 U.S.C. § 2254(d)(1). Maj. Op. at 766-67. The majority opinion fur *784 ther concludes that, under Cullen v. Pinholster, — U.S.-, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), Runningeagle is not entitled to discovery of Melendez’s statements. Maj. Op. at 773-74.
In my view, the state PCR court’s use of “probably would have changed the verdict or sentence” as a standard for Brady materiality was “contrary to” clearly established Supreme Court case law. Under clearly established Supreme Court case law, the standard for materiality under Brady is whether “there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A “reasonable probability” is a probability sufficient to undermine confidence in the outcome, but is less than the preponderance more-likely-than-not standard. Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).
Because Runningeagle has satisfied § 2254(d)(l)’s “contrary to” clause, we must review Runningeagle’s Brady claim “without the deference AEDPA otherwise requires.” Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007). Under this de novo review, I would remand to the district court for discovery on Runningeagle’s sentencing-phase Brady claim. In my view, Runningeagle has established “good cause” for discovery under Rule 6(a) of the Rules Governing § 2254 Cases.[3]
AEDPA’s FRAMEWORK
Because Runningeagle is a state prisoner challenging his conviction and death sentence in federal court, the strictures of the Anti-Terrorism and Effective Death Penalty Act (“AEDPA”) apply to his claim. See 28 U.S.C. § 2254; Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides, in pertinent part, that a state prisoner may not obtain federal habeas relief for any claim “adjudicated on the merits” by a state court unless he can show that the state court’s adjudication of his claim:
resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States ...
28 U.S.C. § 2254(d)(1) (emphasis added). This section contains two independent clauses: a “contrary to” clause and an “unreasonable application” clause. See Terry Williams v. Taylor, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state prisoner is not required to satisfy both clauses of Section 2254(d)(1). Terry Williams, 529 U.S. at 404-05, 120 S.Ct. 1495. He need only show that the state court’s decision was “contrary to” federal law, or, an “unreasonable application” of federal law. Id.

A. The “Contrary To” Clause

A state court’s “use of the wrong legal rule or framework [] constitute^] error under the ‘contrary to’ prong of § 2254(d)(1).” Frantz v. Hazey, 533 F.3d 724, 734 (9th Cir.2008) (en banc); see also Price v. Vincent, 538 U.S. 634, 640, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) (holding that a state court decision is “contrary to” *785 clearly established federal law if the state court “applies a rule that contradicts the governing law set forth in [Supreme Court] cases.”) (internal marks omitted). In Terry Williams, the Supreme Court gave the following example of a state court decision that would be “contrary to” clearly established federal law:
A state court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. Take, for example, our decision in Strickland v. Washington. If a state court were to reject a prisoner’s claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be [contrary to] our clearly established precedent because we held in Strickland that the prisoner need only demonstrate a “reasonable probability that ... the result of the proceeding would have been different.”
529 U.S. at 405-06, 120 S.Ct. 1495 (internal citations omitted). In the context of a Brady claim, our court has held that a state court’s use of the wrong standard for assessing materiality will result in a decision that is “contrary to” clearly established federal law. See Bailey v. Rae, 339 F.3d 1107, 1118 (9th Cir.2003) (holding that the state court’s use of a “probably change the result” standard for materiality was “contrary to” clearly established federal law).

B. The “Unreasonable Application” Clause

A state court’s decision will constitute an unreasonable application of clearly established federal law if the “state court’s application of clearly established federal law was objectively unreasonable.” Terry Williams, 529 U.S. at 409, 120 S.Ct. 1495.
In Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court discussed use of the “unreasonable application” clause when a state court issues a summary denial on the merits. The Court explained that, when a state court issues a summary denial on the merits, the “unreasonable application” clause requires that:
[A federal habeas court] determine what arguments or theories supported or, as here, could have supported, the state court’s decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.
Richter, 131 S.Ct. at 786. The Court then held that, if fairminded jurists could disagree with the hypothetical arguments generated by the federal habeas court, then the state court’s summary denial will not be an “unreasonable application” of clearly established federal law. Id.

C. De Novo Revietv in Federal Court

If a state prisoner is able to satisfy Section 2254(d)(l)’s “contrary to” clause or its “unreasonable application” clause, the federal habeas court must then review the state prisoner’s claim de novo. Frantz, 533 F.3d at 735; see also Lafler v. Cooper, — U.S.-, 132 S.Ct. 1376, 1389-90, 182 L.Ed.2d 398 (2012) (reviewing habeas petitioner’s ineffective assistance claim de novo after finding that state court’s adjudication of the claim was “contrary to” clearly established federal law); Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) (holding that, when the requirement set forth in § 2254(d)(1) is satisfied, “[a] federal court *786 must then resolve the claim without the deference AEDPA otherwise requires”).
With AEDPA’s framework in mind, and with an understanding that this framework was designed to limit and restrict a federal court’s ability to issue the Great Writ in criminal matters originating in state courts, it is time to consider whether Runningeagle is entitled to discovery on his Brady claim.
DISCUSSION
I. The State PCR Court’s Denial of Runningeagle’s Brady Claim Was “Contrary To” Clearly Established Federal Law Because the State PCR Court Applied the Wrong Standard for Assessing Materiality Under Brady
Under Section 2254(d)(l)’s “contrary to” clause, a state court’s “use of the wrong legal rule or frameworkf ] constitute^] error.... ” Frantz, 533 F.3d at 734; see also Price, 538 U.S. at 640, 123 S.Ct. 1848. Here, the state court’s use of the wrong legal standard for assessing materiality under Brady was “contrary to” clearly established federal law.
Under clearly established Supreme Court case law, the standard for materiality under Brady is whether “there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A “reasonable probability” is a probability sufficient to undermine confidence in the outcome, but is less than the preponderance more-likely-than-not standard. Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); see also Bagley, 473 U.S. at 678, 105 S.Ct. 3375. This “reasonable probability” standard was not the standard employed by the state PCR court.
The state PCR court denied Runningeagle relief on his Brady claim, as well as further evidentiary development on the Brady claim, based on Arizona Rule of Criminal Procedure 32.1(e). Rule 32.1(e) provides for relief when “newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence.” (emphasis added). This standard mirrors the standard under Rule 33 of the Federal Rules of Criminal Procedure for granting a new trial based on newly discovered evidence. See United States v. George, 420 F.3d 991, 1000 (9th Cir.2005) (noting that a new trial under Rule 33 requires that the new evidence “would probably result in acquittal”) (emphasis added).[4]
*787 The state PCR court’s use of a “probably would have changed the verdict or sentence” standard for determining materiality under Brady was contrary to clearly established Supreme Court case law. The Supreme Court has explained time and time again that the test for materiality under Brady is less onerous than the standard for obtaining a new trial under Rule 33 of the Federal Rules of Criminal Procedure. In United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court held that, under Brady:
[T]he defendant should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal. If the standard applied to the usual motion for a new trial based on newly discovered evidence were the same when the evidence was in the State’s possession as when it was found in a neutral source, there would be no special significance to the prosecutor’s obligation to serve the cause of justice.
Agurs, 427 U.S. at 111, 96 S.Ct. 2392 (emphasis added). See also Bagley, 473 U.S. at 680-81, 105 S.Ct. 3375 (“The standard of materiality applicable in the absence of a specific Brady request is therefore stricter than the harmless-error standard but more lenient to the defense than the newly-discovered-evidence standard.”) (emphasis added).
Our court has previously held that a state court’s use of the wrong standard for assessing materiality under Brady will re-suit in a state court decision that is “contrary to” clearly established federal law. In Bailey v. Rae, 339 F.3d 1107 (9th Cir.2003), our court reviewed a state court denial of a Brady claim where the state court required the petitioner to show the evidence suppressed “be such as will probably change the result if a new trial is granted.” Id. at 1118 (emphasis added) (internal quotation marks omitted). In finding that the state court decision was “contrary to” clearly established Supreme Court case law, our court explained that:
The steep hurdle set by the state court runs contrary to the materiality test that has been set out by the Supreme Court. In Bagley, the Court explained that evidence is material if there is a “reasonable probability” that a different outcome would have occurred had the evidence been disclosed, meaning that there was a “probability sufficient to undermine confidence in the outcome.” The Court, in arriving at the standard, made a point of distinguishing the stricter “newly discovered evidence” standard of the type applied by the Oregon state court.
Id. (internal citations omitted). Here, as in Bailey, the steep hurdle set by the state PCR court runs “contrary to” clearly established federal law. See also Terry Williams, 529 U.S. at 405-06, 120 S.Ct. 1495 (noting that a state court’s use of the wrong standard in assessing prejudice under Strickland would be an example of a state decision “contrary to” clearly established Supreme Court case law).[5]
*788 II. Because Runningeagle has Satisfied Section 2254(d)(l)’s “Contrary To” Clause, Runningeagle’s Brady Claim is Subject to De Novo Review in Federal Court
Once a state prisoner satisfies Section 2254(d)(l)’s “contrary to” clause or its “unreasonable application” clause, the state prisoner’s habeas claim is subject to de novo review in federal court. See Panetti, 551 U.S. at 953, 127 S.Ct. 2842; Frantz, 533 F.3d at 735. Here, the state PCR court’s denial of Runningeagle’s Brady claim was “contrary to” clearly established federal law because the state PCR court applied the wrong standard for assessing materiality under Brady. Accordingly, Runningeagle’s claim is subject to de novo review because he has satisfied Section 2254(d)(l)’s “contrary to” clause.
III. Pinholster Does Not Bar Further Evidentiary Development for Habeas Claims Subject to De Novo Review
The majority relies on the Supreme Court’s recent decision in Cullen v. Pinholster, — U.S.-, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), for the proposition that Runningeagle is not entitled to discovery in federal court. Maj. Op. at 773-74. Pinholster, however, does not apply to Runningeagle’s Brady claim because Runningeagle’s Brady claim is subject to de novo review.
In Pinholster, the Supreme Court held that a federal habeas court’s “review under § 2254(d)(1) is limited to the record that was before the state court....” 131 S.Ct. at 1398. Pinholster, however, did not address what happens after a habeas petitioner has overcome the limitation of § 2254(d)(1). Indeed, the Supreme Court has held that, once a petitioner has satisfied § 2254(d)(1) “[a] federal court must then resolve the claim without the deference AEDPA otherwise requires.” Panetti 551 U.S. at 953, 127 S.Ct. 2842; see also Frantz, 533 F.3d at 735.
Here, as discussed above, Runningeagle’s claim is subject to de novo review because he has satisfied Section 2254(d)(l)’s “contrary to” clause. It is under this de novo review that a state prisoner can receive discovery in federal court.
IY. Runningeagle is Entitled to Discovery on his Sentencing-Phase Brady Claim
The majority concludes that discovery of Melendez’s potentially exculpatory statements is unnecessary because there is no “reasonable probability” that Runningeagle would have received a life sentence had Melendez implicated Tilden as the stabber. Maj. Op. at 771. This is so, the majority contends, because “the likely result of further inculpation of Tilden was a death sentence for Tilden and not a life sentence for Runningeagle.” Maj. Op.' at 771-72 (emphasis added). I respectfully disagree for the following reasons.

A. The Majority Incorrectly Applies the Standard for a Ruling on the Merits Instead of the Standard for Discovery Under Rule 6(a) of the Rules Governing § 2251 Habeas Cases

First, the majority does not address the relevant legal standard for granting discovery in a habeas proceeding. Under the applicable standard, a habeas petitioner is entitled to discovery under Rule 6(a) of the Rules Governing § 2254 Cases when “specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief. ...” Pham v. Terhune, 400 F.3d 740, 743 (9th Cir.2005) (quoting Bracy v. Gramley, 520 U.S. 899, 908-09, 117 S.Ct. 1793, *789 138 L.Ed.2d 97 (1997)). Our court has also held that discovery should be authorized under Rule 6(a) “when discovery [is] essential for the habeas petitioner to develop fully his underlying claim.” Pham, 400 F.3d at 743 (internal marks omitted); see also Jones v. Wood, 114 F.3d 1002, 1009 (9th Cir.1997) (authorizing discovery because it was “essential” for the habeas petitioner to “develop full/’ his underlying claim). Thus, to obtain discovery, a habeas petitioner is not required to conclusively establish entitlement to relief. To obtain discovery, the habeas petitioner need only show that he “may, if the facts are fully developed, be able to demonstrate that he is entitled to relief,” Pham, 400 F.3d at 743 (internal marks omitted), or that discovery is “essential” to develop the underlying claim. Id.
Here, there is reason to believe that Runningeagle may, if the facts are fully developed, be able to demonstrate that he is entitled to relief on his sentencing-phase Brady claim. Bracy, 520 U.S. at 908-09, 117 S.Ct. 1793. Runningeagle has alleged that the prosecution withheld documents detailing statements codefendant Tilden made to Melendez about Tilden’s role in the murders. The trial judge’s decision to spare co-defendant Tilden from a death sentence was based, in large part, on the trial judge’s view that Runningeagle was the one who inflicted the stab wounds. Thus, statements from Melendez that implicated Tilden as the stabber would be crucial mitigating evidence for Runningeagle.
Moreover, the government did acknowledge during oral argument before our court that there may be a “Melendez File” containing exculpatory evidence that was never turned over to the defense. Oral Argument Audio at 33:40-34:01; 36:28-37:44. In these circumstances, discovery of exculpatory information in the “Melendez File” is “essential” for Runningeagle to “develop fully” his sentencing-phase Brady claim. See Pham, 400 F.3d at 743.

B. The Evidence that Runningeagle was the Stabber Was Not “Overwhelming”

Next, the majority contends that Runningeagle is not entitled to discovery of Melendez’s statements because “[n]othing that Melendez said could have blunted the overwhelming evidence that Runningeagle did the stabbing” and that there is “no basis in the evidence” to conclude that Tilden may have been the stabber. Maj. Op. 771-72. I agree with the majority insofar as there was “overwhelming” evidence that Runningeagle and Tilden entered the Williams’ home, that Runningeagle and Tilden committed first-degree burglary, and that Runningeagle and Til-den were guilty of first-degree murder. But I disagree that there was “overwhelming” evidence that it was Runningeagle, and not Tilden, who stabbed the victims. The evidence that Runningeagle was the stabber was far from compelling.
The trial judge’s view that it was Runningeagle, and not Tilden, who stabbed the victims, apparently came from three items of evidence:
1. The Palmprint: Runningeagle’s palmprint was found on a dryer inside the Williams’ home.
2. The Knife: Runningeagle owned a large survival knife that was similar to the type of knife used to kill the victims.
3. Co-Defendant Orva Antone’s Testimony: Co-Defendant Orva Antone struck a deal with the prosecution and agreed to testify for the prosecution in exchange for the prosecution dismissing murder charges against him. On direct examination, Ant one testified that he witnessed Tilden strike Ms. Williams with a flashlight and observed Runnin *790 geagle “tease” Mr. Williams with a knife. Antone, however, also testified that both Tilden and Runningeagle entered the Williams’ home, and that he did not see whether it was Tilden or Runningeagle who inflicted the stab wounds. On cross-examination, Antone admitted that he was intoxicated at the time of the murders, that he originally told police that he didn’t remember anything about the murders because he was drunk, that he only knew that the Williamses were stabbed because police detectives told him, and that detectives told him that Runningeagle was the stabber.
Given this record, statements from Melendez that implicated Tilden as the stabber could have raised enough doubt in the trial judge’s mind about the identity of the stabber so as to warrant sparing Runningeagle’s life.
To be sure, Melendez, like Antone, had credibility problems. Melendez was a jailhouse informant and Antone was an accomplice in the murders. See Hon. Stephen S. Trott, Words of Warning for Prosecutors Using Criminals as Witnesses, 47 Hastings L.J. 1381, 1383-85 (1996) (noting that accomplices, co-conspirators, snitches, and informers make for a “not-so-reliable” witness). But there is no reason to think that the trial judge would give greater weight to the testimony of a murder accomplice who struck a deal with the prosecution than the testimony of a jailhouse informant.
Indeed, perhaps the most perplexing aspect of the majority opinion is its inconsistent treatment of Melendez’s credibility. First, the majority opinion contends that, had Melendez testified that Tilden was the stabber, such testimony was unlikely to be believed because a jailhouse informant is a “notoriously unreliable source.” Maj. Op. at 770. But three paragraphs later, the majority opinion contends that the trial judge would have sentenced Tilden to death based on Melendez’s testimony. Maj. Op. at 771-72. Which is it? Was Melendez, as the majority opinion claims, so reliable and trustworthy that the trial judge would have sentenced Tilden to death based on Melendez’s statements? Or was Melendez, as the majority opinion also claims, so unreliable that his testimony could not have affected Runningeagle’s sentence?

C. The Majority Misapplies Brady’s MateHality Standard

Finally, the majority mischaracterizes the relevant inquiry for determining materiality under Brady. The majority mistakenly presumes that there is not a “reasonable probability” of a life sentence for Runningeagle because evidence showing that Tilden was the stabber would have only resulted in a death sentence for Til-den. Maj. Op. at 771-72. While it is certainly possible that testimony implicating Tilden as the stabber could have resulted in a death sentence for Tilden, it is also reasonably probable that such testimony could have resulted in a life sentence for Runningeagle. See, e.g., Rompilla v. Beard, 545 U.S. 374, 393, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (“[A]lthough we suppose it is possible that [the sentencer] could have heard it all and still have decided on the death penalty, that is not the test.”). Under Brady’s materiality standard, the relevant inquiry is whether “there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” Bagley, 473 U.S. at 682, 105 S.Ct. 3375. A “reasonable probability” is a probability sufficient to undermine confidence in the outcome, but is less than the preponderance more-likely-than-not standard. Kyles, 514 U.S. at 434, 115 S.Ct. 1555.
Testimony from Melendez implicating Tilden as the stabber would be just the *791 sort of powerful “lingering doubt” evidence that we have repeatedly described as an “extremely effective argument” for defendants in the sentencing phase of a capital case. Lockhart v. McCree, 476 U.S. 162, 181, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); see also Cox v. Ayers, 613 F.3d 883, 898 (9th Cir.2010) (same); Williams v. Woodford, 384 F.3d 567, 624 (9th Cir.2004) (same). Indeed, we have repeatedly relied on a comprehensive study of opinions of jurors in death penalty cases that concluded that “ ‘the best thing a capital defendant can do to improve his chances of receiving a life sentence has nothing to do with mitigating evidence.... The best thing he can do, all else being equal, is to raise doubt about his guilt.’ ” Williams, 384 F.3d at 624 (quoting Stephen P. Garvey, Aggravation and Mitigation in Capital Cases: What Do Jurors Think?, 98 Colum. L. Rev. 1538, 1563 (1998)). See also Cox, 613 F.3d at 898 (noting significance of defense counsel’s penalty-phase “non-shooter” theory). Here, statements from Melendez that implicated Tilden as the stabber could have raised enough doubt in the trial judge’s mind about the identity of the stabber so as to warrant sparing Runningeagle’s life. At a minimum, the question is close enough that Runningeagle is entitled to discovery of Melendez’s statements. See Pham, 400 F.3d at 743.
CONCLUSION
The majority is content to resolve Runningeagle’s sentencing-phase Brady claim without first requiring prosecutors to disclose Melendez’s statements. Because I would require the prosecution to turn over all exculpatory material to Runningeagle, I respectfully dissent.

. Prior to the Supreme Court's decision in Ring v. Arizona, trial judges in Arizona determined mitigating and aggravating circumstances and decided whether a death sentence should be imposed. 536 U.S. 584, 589, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In Ring, the Supreme Court held that this procedure violated the Sixth Amendment's Right to a Trial by Jury. Id. Ring, however, is not retroactive to cases on federal habeas review. Schriro v. Summerlin, 542 U.S. 348, 358, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).

. In the district court, Runningeagle made discovery requests for documents containing Melendez’s statements from the police department, the county attorney’s office, the sheriff’s office, and the county jail. Runningeagle also requested that the court afford him the opportunity to depose investigators and detectives who had spoken with Melendez. The district court denied all of Runningeagle’s discovery requests on the ground that Runningeagle was not "diligent” in attempting to develop the facts of his claim in state court, as required by 28 U.S.C. § 2254(e)(2). The district court’s ruling was incorrect. Runningeagle was diligent in attempting to develop the factual basis of his claim in state court. Before the state PCR court, Runningeagle raised a Brady claim and requested an evidentiary hearing. He also asked for access to the PCR court's subpoena power, and attached supporting documents to his PCR Petition. Runningeagle’s attempts to develop the record before the state PCR court were more than sufficient to satisfy 2254(e)(2)’s diligence requirement. See Stanley v. Schriro, 598 F.3d 612, 624 (9th Cir.2010) ("A petitioner who has previously sought and been denied an evidentiary hearing has not failed to develop the factual basis of his claim and therefore satisfies § 2254(e)(2).”); West v. Ryan, 608 F.3d 477, 484-85 (9th Cir.2010) (same).

. Like the majority, I would affirm the district court’s denial of habeas relief on Runningeagle’s guilt-phase Brady claim. The evidence of Runningeagle's guilt was overwhelming. Accordingly, Runningeagle cannot establish "a reasonable probability that, had the evidence been disclosed to the defense, the result of the [guilt-phase] would have been different.” United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). I also concur in the majority's resolution of Runningeagle’s non -Brady claims.

. The majority takes inconsistent positions on whether the state PCR court reached the merits of Runningeagle's Brady claim. First, the majority contends that Runningeagle’s Brady claim is not procedurally defaulted because the state PCR court reached the merits of Runningeagle’s Brady claim and denied Runningeagle relief on Brady materiality grounds rather than on one of the state law procedural grounds listed in Rule 32.1(e). Maj. Op. at 769. Several pages later, however, the majority contends that the state PCR court’s use of an erroneous materiality standard was not "contrary to” clearly established federal law because the state PCR court could have denied Runningeagle relief based on one of the state law procedural grounds listed in Rule 32.1(e). Maj. Op. at 771 n.5 (contending that the state PCR court could have denied relief based on Rule 32.1(e)’s procedural requirement that evidence be "newly discovered”). I agree with the first proposition put forth by the majority: that the state PCR court reached the merits of the Brady claim and denied relief on the merits rather than one of the state law procedural grounds listed in Rule 32.1(e). Where, as here, a state court decision is interwoven with federal law and “the adequacy and independence of any possible state law ground is not clear from the face of the [state court] opinion, [the federal court] will accept as the most reasonable ex *787 planation that the state court decided the case the way it did because it believed that federal law required it to do so.” Florida v. Powell, -U.S. -, 130 S.Ct. 1195, 1201-02, 175 L.Ed.2d 1009 (2010) (internal quotation marks omitted) (quoting Michigan v. Long, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)).

. The Supreme Court’s decision in Richter does not affect analysis under the "contrary to” clause of § 2254(d)(1). Richter concerned § 2254(d)(l)'s “unreasonable application” clause, not the "contrary to” clause. See Richter, 131 S.Ct. at 785 (“The court of appeals lengthy opinion [ ] discloses an improper understanding of § 2254(d)'s unreasonableness standard....") (emphasis added).